FORGED STEEL WHEEL COMPANY *v.* LEWEL–LYN, COLLECTOR OF INTERNAL REVENUE FOR THE TWENTY–THIRD DISTRICT OF PENNSYLVANIA.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 526. Argued January 8, 9, 1920.—Decided March 1, 1920.

A rough shell forging is a "part" of a shell in the sense of the Munitions Tax Act. P. 512. *Worth Bros. Co.* v. *Lederer, ante,* 507; and *Carbon Steel Co.* v. *Lewellyn, ante,* 501, followed.
258 Fed. Rep. 533, affirmed.

THE case is stated in the opinion.

*Mr. George B. Gordon* and *Mr. George Sutherland,* with whom *Mr. William Watson Smith, Mr. James McKirdy* and *Mr. S. G. Nolin* were on the brief, for petitioner.

*Mr. Assistant Attorney General Frierson* for respondent.

*Mr. E. G. Curtis,* by leave of court, filed a brief as *amicus curiæ.*

*Mr. J. Sprigg McMahon,* by leave of court, filed a brief as *amicus curiæ.*

MR. JUSTICE MCKENNA delivered the opinion of the court.

Action brought by petitioner against Lewellyn, Collector of Internal Revenue, in the District Court for the Western District of Pennsylvania, to recover the sum of $246,920.18 exacted from petitioner as a tax under the Munitions Tax Act and paid under protest. Interest was also prayed from November 27, 1917.

The tax was exacted upon the ground (and it was so alleged) that that sum was the tax on the amount of the net profits received by petitioner from the manufacture and sale of certain steel forgings used in the manufacture of shells.

The circumstances said to show the tax to have been illegally exacted were detailed, of which there was denial by the Collector; and, upon issues thus formed, the case was tried to a jury which, in submission to the instructions of the court, returned a verdict for petitioner for the amount prayed. Judgment upon the verdict for the sum of $263,258.06 was reversed by the Circuit Court of Appeals.

The Court of Appeals considered in one opinion this case and *Carbon Steel Co.* v. *Lewellyn, ante,* 501, and *Worth Bros. Co.* v. *Lederer, ante,* 507. The last two cases we have just decided, and we can immediately say, that if this case does not differ from them in its facts, it does not in principle. It will turn as they did upon the construction of § 301 of the Munitions Tax Act (39 Stat. 756, 780) which imposes upon "every person manufacturing . . . shells . . . ,

*or any part*" [italics ours] of them, a tax of 12½% for each taxable year "upon the entire net profits actually re-. ceived or accrued" for such years from the sale or disposition of the shells manufactured in the United States. The contention in the *Worth Case* was explicitly as it is in this case, that the words "any part" as used in the act "means a substantially finished part;" a part, as there said, which has relation "to the whole structure and to the purpose it is intended to subserve." Here, it is said, "The fundamental idea of a manufactured article is that it must be so nearly completed as to be serviceable for the purpose for which it was designed."

The reasoning of the *Worth Case* covers, therefore, the contention here and rejects it, if, as we have said, the facts be the same, and, we think, they are. There are some circumstances of complexity but they are easily resolved and do not disturb the principle of decision. Of the facts the Court of Appeals said:

"From the proofs it appears the British Government made contracts with certain persons whereby the latter agreed to supply it with high explosive shells in compliance with the specifications, requirement, and inspection of the said government. To fulfill such shell contract the contractor made subcontracts with the Forged Steel Wheel Company, by which the latter agreed to manufacture and furnish to said contractor rough steel shell forgings of the character provided in the contract, as to chemical constituents, tensile strength, size, shape, etc. To fulfill its contract, the Forged Steel Wheel Company either made, had made, or bought in the market the grade of steel required. This steel was of a common commercial type known as rounds. These rounds it nicked and broke into 18-inch lengths, which it then heated and put through two forging processes, by the first of which a hole was pierced from one end of the round to within two inches of the other; by the second, the round was lengthened by draw-

ing it through three successive rings of a hydraulic press. The output of the Forged Steel Wheel Company's work was a hollow steel body or shell form, of suitable composition, shape, and length, from which to make, to the British Government standards, the high explosive projectiles contracted for. The weight of such shell forms was about 170 pounds. To make this shell form suitable for use as a shell, the contractor to whom the Forged Steel Wheel Company then delivered it was required to dress, bore, and machine it down to 77 pounds. This required some 27 distinct and separate processes."

The court after further comment on the facts, and consideration of the opinion of the District Court and its reasoning, and distinguishing the cases that influenced the District Court, said. "But in the excise law in question Congress is dealing with the imposing of taxes as the main object, and with the work done as a mere incident to aid in determining the tax. In that aspect the quantum of the work done is immaterial." And again, "the crucial question is not the quantum of the manufacture measured by steps, but the fact of manufacture resulting in profits."

Replying to the contention that the purpose of Congress was not to tax anyone but the manufacturer of a completed shell or the maker of a completed part of a shell, and that the forging of the Wheel Company was not a completed part of a shell, the Court of Appeals said, "It is manifest that, standing alone, the statute neither expresses nor implies any warrant or implication for limiting the broad, inclusive, generic words 'any part' to the restricted, specific, qualified term 'any completed part.'"

The Court of Appeals also considered the rule of construction that statutes levying taxes should not be extended by implication beyond the clear import of their language and the cases from which the rule was deduced. The rule was conceded, its application to the present controversy was denied.

For the sake of brevity we consider only the cited decisions of this court. They are *Tide Water Oil Co.* v. *United States,* 171 U. S. 210, 218; *Worthington* v. *Robbins,* 139 U. S. 337; *Anheuser-Busch Association* v. *United States,* 207 U. S. 556. These were customs cases and the statutes were given an interpretation on account of their purpose. They are besides not in point. In the first one the statute had the words "wholly manufactured," and, giving effect to them, it was decided that boxes made from shooks imported from Canada, though nailed together and the sides of the boxes thus formed trimmed in the United States, were not boxes "wholly manufactured" in the United States and entitled, upon being exported, to a drawback under a statute which allowed a drawback on articles "wholly manufactured of materials imported." The *Worthington Case* was cited. In that case a duty was exacted upon "white hard enamel" under a statute which imposed a duty of 25% upon "watches, watch cases, watch movements, parts of watches and watch materials." This on the contention of the Government that the enamel fell under the head of "watch materials." The contention was rejected it being conceded that the enamel was used for many other purposes than for watch faces. In the *Anheuser-Busch Case* a claim of drawback upon corks exported with bottled beer was rejected. The ground of the claim was that the corks were subjected to a special treatment to be fit for use and hence it was contended that they should be regarded as "imported materials . . . used in the manufacture of articles manufactured or produced in the United States," that is the bottled beer. We replied "a cork put through the claimant's process is still a cork." The cases, therefore, do not sustain the contention for which they are cited.

Objection is made to the action of the Circuit Court of Appeals in simply reversing the judgment of the District Court and not remanding the case for a new trial. There

was no objection made to that action and no request for a remand of the case. And besides there was nothing to retry. The case involves only propositions of law.

*Judgment affirmed.*

MR. JUSTICE DAY and MR. JUSTICE VAN DEVANTER dissent.