### MILLS WOVEN CARTRIDGE BELT CO. v. MALLEY.

(Circuit Court of Appeals, First Circuit. February 13, 1923.)

No. 1591.

1. **Internal revenue** ⬅2—**Munitions tax was not repealed by Revenue Act of 1917.**

The munitions tax levied by Revenue Act Sept. 8, 1916, § 301 (Comp. St. § 6336⅛b), subdivision 2 of which provided the section should cease to be of effect one year after the termination of the European War, was not repealed by Revenue Act Oct. 3, 1917, § 214 (Comp. St. 1918, § 6336⅛bb), which amended that section by reducing the rate of tax and providing it should cease to be of effect after January 1, 1918, so as to prevent the collection of the munitions tax for the year 1917, which by sections 304 and 305 (Comp. St. §§ 6336¼e, 6336¼f) could not be assessed prior to the returns the manufacturers were required to make before March 1, 1918.

2. **Appeal and error** ⬅1062(4)—**Submission to jury whether ammunition belts were parts of machine guns held harmless to plaintiff.**

The submission to the jury of the question whether ammunition belts were part of machine guns within Revenue Act 1916, § 301 (Comp. St. § 6336⅛b), levying a tax on munitions, on which question the jury found in the affirmative, was harmless to the manufacturer seeking to recover the tax, whether the question was a mixed question of law and fact, in which event the jury decided the facts against him, or was a question of pure law, in which event the jury's finding was correct.

3. **Internal revenue** ⬅11—**Ammunition belts for machine guns are part within Munitions Tax Act; "parts of machine guns."**

Ammunition belts, which are necessary for the operation of machine guns as such, though the guns can be operated for single shots by inserting individual cartridges, are "parts of such machine guns" within Revenue Act 1916, § 301 (Comp. St. § 6336⅛b), levying a munitions tax upon such parts.

4. **Trial** ⬅352(1)—**Submission of question to jury held not to imply doubt as to construction of statute.**

The submission to the jury of the question whether ammunition belts were parts of machine guns within the munitions tax statute does not imply a doubt by the court as to the construction of the statute so as to

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

bring the case within the rule that such statute is not to be extended by implication beyond the clear import of its language, but was only a wise precaution to make the record such as to sustain a final determination of the validity of the tax, whether that question were considered a pure question of law, or a mixed question of law and fact.

In Error to the District Court of the United States for the District of Massachusetts; James M. Morton, Judge.

Action at law by the Mills Woven Cartridge Belt Company against John F. Malley, formerly Collector of Internal Revenue. Judgment for defendant, and plaintiff brings error. Affirmed.

Harry T. Newcomb, of New York City (Charles F. Choate, 3d, of Boston, Mass., on the brief), for plaintiff in error.

Frederic S. Harvey, Asst. U. S. Atty., of Lowell, Mass., and Preston C. Alexander, Special Atty., Bureau of Internal Revenue, of Washington, D. C. (Robert O. Harris, U. S. Atty., of Boston, Mass., and Carl A. Mapes, Solicitor of Internal Revenue, of Washington, D. C., on the brief), for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. The plaintiff seeks to recover taxes paid under protest for the years 1916 and 1917, assessed upon net profits derived by plaintiff from the manufacture and sale of machine gun belts. The taxes were levied under the following provisions of the Revenue Act of September 8, 1916, 39 Stat. 781:

"Sec. 301 (1). That every person manufacturing * * * (d) firearms of any kind and appendages, including small arms, cannon, machine guns, rifles, and bayonets; * * * or (f) any part of any of the articles mentioned in * * * : Shall pay for each taxable year, in addition to the income tax imposed by Title I, an excise tax of twelve and one-half per centum upon the entire net profits actually received or accrued for said year from the sale or disposition of such articles manufactured within the United States. * * *

"(2) This section shall cease to be of effect at the end of one year after the termination of the present European War, which shall be evidenced by the proclamation of the President of the United States declaring such war to have ended." Comp. St. § 6336¼b.

and of section 214 of the Revenue Act of October 3, 1917, 40 St. 308:

"Sec. 214. * * * Subdivision (1) of section three hundred and one of such act of September 8, 1916, is hereby amended so that the rate of tax for the taxable year nineteen hundred and seventeen shall be ten per centum instead of twelve and one-half per centum, as therein provided.

"Subdivision (2) of such section is hereby amended to read as follows: '(2) This section shall cease to be of effect on and after January 1, 1918.'" Comp. St. 1918, § 6336¼bb.

These taxes were assessed subsequent to January 1, 1918. Two questions are involved:

(1) Whether section 214 of the Act of October 3, 1917, was an unqualified repeal of the prior act so that no such tax could be levied subsequent to January 1, 1918.

(2) Whether the machine gun belts were, as matter of law or as matter of mixed fact and law, parts or appendages of machine guns, within the meaning of section 301(1), supra.

[1] 1. As to the alleged repeal: We think it plain that the applicable provision of the act of 1916 was not repealed by the quoted provision in the act of 1917. The act of 1916 is a general revenue act and contains in title III elaborate provisions, in 13 sections, for a "munitions manufacturers' tax." It was passed while we were neutral in the World War, and for the obvious purpose of obtaining revenue from profits derived from furnishing war materials to the peoples engaged in the World War. By section 301(2), supra, this tax was to end "one year after the termination of the present European War." In April, 1917, the United States became a party to this war. It was thereafter desired to promote the manufacture of war materials. By the revenue act of October 3, 1917, Congress changed the tax in two respects; by reducing the rate from 12½ per cent. to 10 per cent. for the year 1917, and by cutting off the tax entirely at the end of 1917. The applicable provision of the act of 1916 was not repealed. It was amended.

Under section 304 (Comp. St. § 6336¼e) manufacturers of such articles were required to make sworn returns, not due until March 1, 1918, covering the business of the previous calendar year. The assessment, of course, was subsequent to these returns. Section 305 (Comp. St. § 6336¼f). The construction claimed would nullify the clearly manifest purpose of Congress to assess such tax at the reduced rate of 10 per cent. for 1917; it would involve the absurdity of providing in the same section a 10 per cent. tax for 1917 and cutting off all such taxes for 1917. This contention cannot be sustained.

2. Were the machine gun belts parts or appendages of machine guns within the meaning of the act? The case was tried before a jury on agreed facts and evidence. There is little or no dispute about the facts. The Vickers gun belts are loaded with cartridges, and attached to the machine gun in such manner that in operation the cartridges are successively conveyed to the firing chamber of the gun and discharged. When the belt is thus emptied, it is removed, and another loaded belt is attached in its place. In use, each gun is supplied with a number of loaded gun belts sufficient to last throughout the firing anticipated. As they are emptied they are ordinarily sent back of the firing line to be reloaded. The belts are interchangeable, no particular belt being necessarily used with any particular gun. Many of the belts used are destroyed or abandoned, so that perhaps 50 times as many belts as guns are supplied for military operations. While it is physically possible to load a machine gun by hand with a single round, the gun cannot function as a rapid-firing machine gun except through use of the gun belt. Without the belt, the gun cannot be operated as a machine gun. A sample belt was submitted to the jury, also at the argument before this court, and its relation to the machine gun and to its operation was orally explained.

The court below submitted to the jury, on instructions not excepted to, the following question:

"Where the Vickers machine gun belts manufactured by the plaintiff appendages to the Vickers machine gun or parts thereof?"

The jury answered, "Yes." The court took this verdict in the alternative form as follows:

"The jury find for the defendant. If as a matter of law the defendant is not entitled to a verdict, then the jury find for the plaintiff and assess damages in the sum of $6,037.69, and consent that this alternative verdict may be entered with the same force and effect as if originally returned by them on order of the United States District Court for the District of Massachusetts, or of the Circuit Court of Appeals for the First Circuit, or of the United States Supreme Court."

Cf. Automatic Pencil Sharpener Co. v. Boston Pencil Pointer Co. (C. C. A.) 279 Fed. 40.

Plaintiff moved that a verdict be ordered in its favor. But the court entered judgment on the verdict for the defendant. The decision was right.

[2, 3] Whether the question was a pure question of law, or a mixed question of law and fact, it is clear that the plaintiff was not harmed by the submission of this issue to the jury. The verdict may stand, not necessarily because it is right as matter of fact—for there may well be no question of fact involved—but because it was right as matter of law. It is therefore unnecessary to determine whether the issue was a mixed question of law and fact, or was a pure question of law, for any possible fact element in the issue was properly resolved by the jury against the defendant. If plaintiff is correct in its contention that the question is a pure question of law, we reach the same conclusion the jury reached.

[4] The plaintiff's contention that the submission of the question to the jury implies such doubt as to the construction of the statute as to bring the case within the rule laid down in Gould v. Gould, 245 U. S. 151, 38 Sup. Ct. 53, 62 L. Ed. 211, cannot be sustained. The submission by the learned District Judge of the question to the jury does not imply doubt of the proper construction, or ambiguity in the application of the statute; it implies only a wise and efficient caution in making a record such as to ground a final determination of the validity of the tax.

The circumstances under which this legislation was enacted and the manifest purpose of Congress "to include the whole subject of war munitions and war accessories in a common class" are adverted to by Judge Buffington in his opinion in Carbon Steel Co. v. Lewellyn, 258 Fed. 533, 535, 169 C. C. A. 473. We need not now elaborate on the views therein well expressed. The decision reached by that court was confirmed in 251 U. S. 501, 40 Sup. Ct. 283, 64 L. Ed. 375. Compare, also, Worth Brothers v. Lederer, 251 U. S. 507, 510, 40 Sup. Ct. 282, 64 L. Ed. 377. In that case the court said, as to a contention at least as plausible as the one made by the plaintiff in the instant case:

"Congress did not intend to subject its legislation to such artificialities and make it depend upon distinctions so refined as to make a part of a shell not the taxable 'part' of the law."

Compare Forged Steel Wheel Co. v. Lewellyn, 251 U. S. 511, 40 Sup. Ct. 285, 64 L. Ed. 380.

We find no error in the proceedings below. The judgment must be affirmed, with costs to the defendant in error in this court.