Booth, Judge,
delivered the opinion of the court:
Section 900 of the revenue acts of 1918, 40 Stat. 1122, and 1921, 42 Stat. 291, provides as follows:
“Sec. 900. That there shall be levied, assessed, collected and paid upon the following articles sold or leased, by the *340 manufacturer, producer, or importer, a tax equivalent to the following percentages of the price for which so sold or leased — (1) Automobile trucks and automobile wagons (including tires, inner tubes, parts, and accessories therefor, sold on or in connection therewith or with the sale thereof),. 3 per centum; (2) other automobiles and motor cycles (including tires, inner tubes, parts, and accessories therefor, sold on or in connection therewith or with the sale thereof), except tractors, 5 per centum; (8) tires, inner tubes, parts, or accessories, for any of the articles enumerated in subdivision (1) or (2), sold to any person other than a manufacturer or producer of any of the articles enumerated in subdivision (1) or (2), 5 per centum.”
The Commissioner of Internal Revenue levied and collected, over plaintiffs’ protest, under the foregoing sections of the laws cited, for the period from June 2, 1919, to February 4, 1928, a revenue tax on plaintiffs’ product of $19,-946.89. This suit is for the recovery of the amount of taxes so paid. No jurisdictional issue is involved.
Plaintiffs are copartners doing business at Midlothian, Texas, under the firm name of National Rubber Filler Company. In the year 1912 they began the manufacture and sale of a product which they designated as a tire filler. Plaintiffs purchased from junk dealers a large number of used, old, and discarded inner tubes; i. e., worthless inner tubes, so far as use in a pneumatic motor-vehicle tire is concerned. These are then reduced by machines to innumerable and fine particles of rubber and subsequently vulcanized after the addition to the mass of fixed quantities of cement. The vulcanizing process is followed by molding the heated product into long cylindrical-shaped sticks of solid rubber, and these in turn are cut into sections or chunks approximately three inches in length at the top and two and a half inches at the bottom. The difference in length between the top and bottom enables a purchaser of chunks to adapt them for use in a motor-vehicle tire; that is, the outer casing. This product is sold direct to the purchaser. It has found no market otherwise. A purchaser informs the plaintiffs as to the size of the outer casing, and the plaintiffs place in a sack and ship to him a sufficient number of “ chunks ” to completely fill and encircle the described casing.
*341 The commercial value of the filler emanates from its ability to enable the owner of a badly worn and dilapidated outer casing, one so far gone that it will no longer support the air pressure of an inflated inner tube, to obtain from such an outer casing an increased mileage; otherwise the outer casing would have to be discarded and a new one supplied. It serves to materially prolong the life of the outer casing. Manifestly it could be used in new outer casings; but it is not so generally employed, for the ordinary motor vehicle user prefers the easy ride of a pneumatic inner tube to the material reduction of resiliency produced by the use of the filler. The record establishes beyond doubt that the real merit of the filler and the place it takes in the automobile world is an available commodity for automobile owners of modest means who are compelled to economize in the operation and maintenance of their cars. The filler has found no other demand of substantial proportions.
The defendant insists that the filler is taxable under the terms of the revenue law quoted. The most perplexing problem presented for judicial action is the question of the assimilation of some unique and distinct product used in connection with articles and products specifically enumerated in taxing statutes. The defense in this case pertinently illustrates the difficulties. The defendant contends that the filler is an article as distinguished from material; if not so, it is argued, that in any event it is an inner tube. Next we are told that if it is not an inner tube it is a part within the meaning of subdivision (3) of the statute, and if unable to classify it as a part, it assuredly falls within the term “ accessory.” Finally the argument is urged upon us that notwithstanding the apparent inability to permanently classify the filler, it is nevertheless within the intent and purpose of the taxing acts.
In view of the record and the arguments advanced, it may not escape observation that the correct classification of the filler for taxation purposes is one of doubt, not only to the court but to the defendant as well. Congress, in imposing-taxes upon the articles mentioned in section 900 of the revenue laws, was not dealing in obscure and involved trade terms. Tires, inner tubes, and accessories, when used in con *342 nection with motor vehicles, have a firmly established trade meaning. Parts and accessories, as said by this court ih Martin Rocking Fifth Wheel Co. v. United States, 60 C. Cls. 466, 473, “ are no longer as Greek to the average inhabitant.'’ The purchaser of a motor vehicle is generally cognizant of what is included in the terms, and the dealer now assures his-customer that the car is sold fully equipped.
In the case of Gould v. Gould, 245 U. S. 151, the Supreme Court said:
“In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to-enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the Government, and in favor of • tlie citizen.”
In United States v. Merriam, 263 U. S. 179, the court said:
“ On behalf of the Government it is urged that taxation is a practical matter and concerns itself with the substance of the thing upon which the tax is imposed rather than with legal forms or expressions. But in statutes levying taxes the literal meaning of the .words employed is most important, for such statutes are not to be extended by implication beyond the clear import of the language used. If the words are doubtful, the doubt must be resolved against the Government and in favor of the taxpayer.”
In the case of Atwater Kent Mfg. Co. v. United States, decided by this court June 14, 1926, 62 C. Cls. 419, the Chief Justice said, in delivering the opinion of the court:
“The defendant argues that the timers and coils ‘were parts Avhen sold to make up the dealer’s stock of parts; in fact, they Avere parts from the time they were manufactured to supply the Avell-knoAvn and ever-increasing demand for such parts.’ -But the question is not whether they were ‘ parts ’ of something after they were attached to the one or another kind of machine to which they were attached and in Avhich they could function, but whether they were sold as parts of the articles mentioned in subdivisions (1) and (2) of section 900. * * * The context shows that the word ‘ parts ’ referred to in the acts Avas intended to have and should be given a restrictive meaning.”
Beyond doubt the articles enumerated specifically in subdivision (3) of section 900 have no common meaning. Oth *343 erwise it .would have been imnecessary to so' specify. •' In similar revenue legislation tire sanio course is pursued by Congress,, and articles subjected to taxation carefully enumerated specifically. Eeference to an article by its fixed trade name was obviously not intended to reach another not so known or even so designated: by the trade to which it is inseparably connected. In subdivision (4) of the act of 1918, pianos, player pianos, music boxes, etc., are taxed. Subdivision (6) taxes “ chewing gum or substitutes therefor,” the last a significant designation. Surely not every article used in connection with a motor vehicle was intended to be taxed by the statute- here involved. If permitted to indulge in intense technicalities the plaintiffs’ filler is not a tube; it is a solid substance, and the inner tubes from which it is made have all .theretofore been taxed.
We are not inclined to the opinion that the possibility of use determines the classification. ■ As a matter of established fact, the plaintiffs’ filler finds its utilization a possibility subsequent to the partial and almost complete exhaustion of the tire mentioned in the act. The filler is. not sold when the tire is capable of functioning as tires are designed to function. The filler takes its place in the last stages of the tire’s utility; it is in its nature more of a makeshift, a last resort, a final available adjunct to a demoralized' tire by which the tire’s life may be extended, and when the tire finally gives way the filler itself becomes useless. Therefore, it seems to us that taxing a product of this sort is not within the meaning or may by implication be construed to be within the_ meaning of the statute. Thé record discloses that the filler and similar products serving a similar purpose were well known to the automobile industry for many years jpre-ceding the passage of the revenue acts; It had been extensively advertised and was a well-known comihercial product under its trade name of “ Eubber Filler.” There was no difficulty in identifying the product by name. The process and the substance were not new in 1918. Congress did not mention it in the statutes, and the doubt as to inclusion therein is made evident by the course of this proceeding.
Judgment for the plaintiffs for $24,932.98. It is so ordered.
*344 Moss, Judge; Ghaham, Judge; Hay, Judge; and Campbell, Chief Justice, concur.