**WEIR v. McGRATH, Collector of Internal Revenue.**

**SAME v. DEAN, Collector of Internal Revenue.**
**Nos. 289, 290.**

District Court, S. D. Ohio, W. D.
May 21, 1928.

D. W. Iddings and A. W. Schulman, both of Dayton, Ohio, for plaintiff.

Simon Ross, Asst. U. S. Atty., of Cincinnati, Ohio.

HICKENLOOPER, District Judge.

These two cases are actions brought by the plaintiff against collectors of internal revenue of the United States to recover certain excise taxes claimed to have been erroneously and illegally assessed and collected from the Air-Friction Carburetor Company for the periods and in the amounts set forth in the several exhibits attached to and made parts of the petitions.

The Air-Friction Carburetor Company manufactures a patented carburetor, and the tax was assessed and collected under color of title 9, § 900, of the Revenue Act of 1918 (40 Stat. 1122), and title 9, section 900, of the Revenue Act of 1921 (42 Stat. 291). This section provides that there shall be levied, assessed, and collected and paid upon the following articles sold or leased by the manufacturer a tax equivalent to the following per cent. of the price for which so sold or leased: "(3) Tires, inner tubes, parts, or accessories for any of the articles enumerated in subdivision (1) or (2), sold to any person other than a manufacturer or producer of any of the articles enumerated in subdivision (1) or (2), 5 per centum." 40 Stat. 1057, 1122; 42 Stat. 291.

The articles enumerated in subdivisions (1) and (2) are automobile trucks, automobile wagons, other automobiles, and motorcycles, but excepting tractors. The carburetors manufactured by the Air-Friction Carburetor Company may be adapted for use and used with tractors, marine engines, or any other type of internal combustion gasoline engine. The court finds, however, that they are primarily designed for and adapted to use in substitutions for or replacements of standard equipment in automobiles. The advertising is replete with representations that this patented carburetor will develop 30 to 50 per cent. more mileage and power than any other, that the car may be operated at a speed less than three miles per hour on high gear, that the sudden opening of the throttle will not choke or starve the motor, that these qualities permit driving in slow-moving traffic without shifting gears, that some cars need special tops for connecting to the manifold, and other references showing the chief use and purpose of the manufacture. The lists prepared by the manufacturer give the particular style and size applicable to almost every known type and manufacture of automobile and truck, and while there are a few such sizes and styles given for tractors and marine engines, these are in the hopeless minority and the case contains no definite evidence that the carburetors were even infrequently used upon tractors, marine or stationary internal combustion gasoline engines. The only evidence is that they might be so used by proper adjustment of top to intake manifold.

Two questions are presented for determination. The first is whether the payments were made under sufficient protest and duress to justify recovery. The second is whether these carburetors in question are subject to tax as automobile or truck or motorcycle parts or exempt from taxation as outside of that definition, i. e., as "articles which have a general commercial use and which are not especially designed and peculiarly adapted for use in connection with automobile trucks, automobile wagons, other automobiles or motorcycles." Article 16 of Regulations 47 adopted by the Commissioner.

At the time the taxes were paid there was no formal protest of any kind, but at the time the assessment was made and at the time of payment there was considerable complaint that the taxes were not due, should not legally be assessed, and were illegally and erroneously demanded. To these complaints and arguments propounded by the then president of the corporation the deputy collector who made the assessment and called to demand and collect payment of the taxes, at least part of them, replied that they must be paid or the officers of the company would expose themselves to arrest and criminal prosecution. There could be no doubt in the mind of such deputy collector that the officers of the company considered the assessment as illegal or that payment was made otherwise than in the belief that there was no means of avoiding such payment. This in the opinion of the court would in itself constitute coercion or duress and be sufficient payment under protest to justify recovery even without regard to the amendment of Rev. St. § 3226 by the Act of June 2, 1924 (U. S. C. title 26, § 156 [26 USCA § 156]).

In the case of Radich v. Hutchins, 95 U. S. 210, 213, 24 L. Ed. 409, the court says:

"To constitute the coercion or duress which will be regarded as sufficient to make a payment involuntary, * * * there must be some actual or threatened exercise of power possessed, or believed to be possessed, by the party exacting or receiving the payment over the person or property of another, from which the latter has no other means of immediate relief than by making the payment." No definition of "duress" could be more applicable to the facts in issue than the above, for the deputy collector threatened to exercise a power of arrest for failure to make true return, which he either possessed or was believed to possess, and the officers of the company certainly believed that there was no means of escape except by payment.

The same doctrine of duress is illustrated by the cases of Swift & C. & B. Co. v. U. S., 111 U. S. 22, 28, 29, 4 S. Ct. 244, 28 L. Ed. 341; Atchison, etc., Ry. Co. v. O'Connor, 223 U. S. 280, 32 S. Ct. 216, 56 L. Ed. 436, Ann. Cas. 1913C, 1050; Ward v. Love County, 253 U. S. 17, 23, 40 S. Ct. 419, 64 L. Ed. 751; Compare Gaar, Scott & Co. v. Shannon, 223 U. S. 468, 32 S. Ct. 236, 56 L. Ed. 510. In the Atchison Case, supra, at page 286, of 223 U. S., 32 S. Ct. 216, 217, the court says: " * * * And the party indicates by protest that he is yielding to what he cannot prevent, courts sometimes, perhaps, have been a little too slow to recognize the implied duress under which payment is made."

██ But apart from such implied duress, Rev. St. § 3226 was amended in 1924 so as to provide specifically that "such suit or proceeding may be maintained, whether or not such tax, penalty, or sum has been paid under protest or duress." This section still retains the provision that no such suit or proceeding shall be maintained for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected until a claim for refund or credit has been duly filed with the Commissioner of Internal Revenue. This application for refund has been made in the instant case, and it is our opinion that the addition of a provision making protest or duress unnecessary is but a recognition of the fact that in substance and true effect the recovery is from the government and an example of liberality and fairness upon the part of the government and a disinclination to retain the benefit of that which has wrongfully been exacted whether technicalities have been complied with or not. Other illustrations of this attitude are to be found in the income tax laws ordering credit or refund in all cases where the amount assessed and collected is found to have been erroneously computed, whether there is any payment under protest or even any claim of such error.

But it is objected that suits against collectors of internal revenue are personal (Sage et al. v. U. S., 250 U. S. 33, 39 S. Ct. 415, 63 L. Ed. 828) and that payments made prior to the amendment of June 2, 1924, without protest, created a vested right to a then existing defense on the part of the collector which could not thereafter be defeated by legislation (Pritchard v. Norton, 106 U. S. 124, 132, 1 S. Ct. 102, 27 L. Ed. 104). The Sage Case undoubtedly held that such suits against collectors of internal revenue were personal to the extent that, the United States not being a party, the adjudication of the suit against the collector did not foreclose action against the United States for any unrecovered portion of the claim. But we do not think that such actions are to be considered as so far personal to the collector, individually, that Congress is prevented from providing any reasonable system, by suit against the collector or otherwise, for the repayment to the taxpayer of taxes illegally or erroneously collected, and even though such taxes were paid without formal protest. This power upon the part of Congress is recognized in Wickwire v. Reinecke, 275 U. S. 101, 105, 106, 48 S. Ct. 43, 72 L. Ed. 184. The amendment of 1924 obviously had reference and application to payments already made, and suits founded thereon, as well as to payments to be made. While the claim was not there filed within the period allowed by act of Congress, and the suit therefore failed, the case of Coleman v. U. S., 250 U. S. 30, 39 S. Ct. 414, 63 L. Ed. 826, recognizes the validity of a claim under a specific statute creating the right, even though the payment was made without protest or reservation of rights before the passage of the act.

On the first point, therefore, we are of the opinion that sufficient protest and duress did in fact exist; but even though this were not so, we are of the opinion that the plaintiff is nevertheless within the protection of Rev. St. § 3226, as amended (U. S. C., title 26, § 156 [26 USCA § 156]).

██ The correct determination of the second justiciable question, viz., whether the carburetors here in question come fairly and clearly within the description of "automobile parts," involves the construction and interpretation of the sense in which these words

are used in the act. In giving such construction to the acts of Congress the rule is well settled that Congress must be deemed to use terms in their ordinary, popular, and commercial sense, rather than in a distinctive or technical sense, unless it clearly appear that the latter sense was intended. Swan v. Arthur, 103 U. S. 597, 598, 26 L. Ed. 525; Maddock v. Magone, 152 U. S. 368, 14 S. Ct. 588, 38 L. Ed. 482; U. S. v. Buffalo Gas Fuel Co., 172 U. S. 339, 341, 19 S. Ct. 200, 43 L. Ed. 469. It is true that the article upon which the tax is levied must come fairly and clearly within the descriptive words of the act and that "the literal meaning of the words employed is most important, for such statutes are not to be extended by implication beyond the clear import of the language used. If the words are doubtful, the doubt must be resolved against the government and in favor of the taxpayer." U. S. v. Merriam, 263 U. S. 179, 187, 188, 44 S. Ct. 69, 71, 68 L. Ed. 240, 29 A. L. R. 1547; Gould v. Gould, 245 U. S. 151, 153, 38 S. Ct. 53, 62 L. Ed. 211. This does not mean, however, that if the article does fall, fairly and clearly, within the language of the act, the mere possibility of occasional or incidental use in a manner not covered will withdraw the article from the operation of the law. In Magone v. Heller, 150 U. S. 70, 14 S. Ct. 18, 37 L. Ed. 1001, the question for determination was whether sulphate of potash was a substance "expressly used for manure." At page 75 of 150 U. S., 14 S. Ct. 18, 20, the court uses the following language: "If the only common use of a substance is to be made into manure, or to be itself spread upon the land as manure, the fact that occasionally, or by way of experiment, it is used for a different purpose, will not take it out of the exemption. But if it is commonly, practically, and profitably used for a different purpose, it cannot be considered as 'expressly used for manure,' even if in the majority of instances it is so used."

The question of classification of imports for customs duty purposes is closely analogous to the question here involved, for there also it is necessary to determine whether the article falls within the descriptive provisions of the statute. "Under such circumstances, ordinary use, not occasional or subsequent use, furnishes the guide for classification." Sonn v. Magone, 159 U. S. 417, 421, 16 S. Ct. 67, 68, 40 L. Ed. 203. In Magone v. Wiederer, 159 U. S. 555, 16 S. Ct. 122, 40 L. Ed. 258, the doctrine is stated that it

is the chief use rather than the exclusive use which determines the classification, and this same conclusion is reached by Judge Dickinson (Eastern District of Pennsylvania) in his decision in the case of Philadelphia Storage Battery Co. v. Lederer, Collector, 21 F.(2d) 320, holding that the word "automobile" as used in this connection is purely descriptive of the articles taxed, an adjective modifying "parts," and that in order to tax batteries under this designation, such batteries must fall within the definition of "automobile batteries"; no such article being known either in general parlance or in the trade.

The several uses to which such articles may be put are helpful and relevant only to the extent that such possible uses may assist in the construction of the act and the determination whether such articles clearly fall within the description or are articles commonly used for other recognized purposes. Thus if the common, general, practical, predominating, and chief use of the carburetors is in connection with the operation of an automobile, the possible or occasional use in connection with other internal combustion gas engines will not defeat the construction that the carburetors were "automobile carburetors" or "parts" and within the classification or type of articles intended by Congress to be taxed. Conversely, if the carburetors are commonly, practically, generally, and profitably used with various types of internal combustion gas engines, they are not "automobile parts," eo nomine, and the mere fact that they are also used on automobiles will not make them taxable.

Upon this doctrine the otherwise seemingly conflicting opinions of the Department and Court of Claims are easily reconcilable. Thus induction coils and timers have been held not within the language of the statute because it appeared that such articles were commonly, generally, practically, and profitably used with all types of gasoline engines as well as with automobiles. Atwater Kent Mfg. Co. v. U. S., 62 Ct. Cl. 419. On the other hand, where a manufacturer of storage batteries sought the custom of the automobile trade, assured the latter of the especial qualities of his battery, and designs it as a part of the automobile into which it is to be introduced, such storage batteries were held to be automobile parts. Cole Storage Battery Co. v. U. S., 65 Ct. Cl. 164, decided by the Court of Claims April 2, 1928. So also where a lifting jack is designed and sold to meet the peculiar needs of the automobilist it is held to be an accessory for such automo-

biles although susceptible of use with tractors, wagons, or as machine shop equipment. Walker Mfg. Co. v. U. S., 65 Ct. Cl. 394, decided by the Court of Claims April 16, 1928. Spark plugs, piston rings, leaf springs, miniature incandescent lamps, bolts, nuts, washers, screws, wrenches, etc., all fall into the category that they are commonly, generally, practically and profitably used in other connections. The semitrailer (Martin Rocking Fifth Wheel Co. v. U. S., 60 Ct. Cl. 466), and a tire filler to be used with worn-out casings (National Rubber Filler Co. v. U. S., 63 Ct. Cl. 337), are decided upon the different doctrine that as such articles do not constitute any essential element or even accessory to the normal operation of an automobile, they cannot therefore be considered as accessories or parts of such automobile.

A carburetor of some sort is a necessary and component part of every automobile, and the burden rested upon the plaintiff in these actions to establish that it was commonly, generally, practically, and profitably used for different purposes (Wickwire v. Reinecke, Collector, 275 U. S. 101, 48 S. Ct. 43, 72 L. Ed. 184), before the court would be justified in holding that it was an article in general commercial use and not especially designed and peculiarly adapted for use in connection with automobiles—before the court would be justified in classifying such carburetor as beyond the provisions of the act. This burden the plaintiff has failed to sustain. On the contrary, the carburetors in question are advertised as peculiarly adapted to use in automobiles. They are designed with the idea of increasing mileage, permitting operation at slow speed while in high gear, promoting ease of starting and efficiency of operation. The tops or attachments are further designed particularly with reference to attachment to intake manifolds of automobiles and trucks, and the utmost that may be said of the proofs is that such carburetors may be adapted with advantage to tractors and marine or stationary engines. The evidence does not establish that any of the carburetors are commonly or generally so used, but simply that they might be.

Under the above circumstances we are of the opinion that the tax was properly assessed and collected, and the petition must be dismissed. If error proceedings are to be prosecuted, separate findings of fact should be prepared and submitted to the court in conformity to the findings here included.