Graham, Judge,
delivered the opinion of the court:
There are involved here six cases which by order of the court dated May 11, 1928, were consolidated. Two suits each brought by the three corporations by agreement were briefed, argued, and submitted as one case.
The details of the relations and operations of these corporations are set out in the findings, and it is not necessary for the decision to rehearse them here.
They are seeking a refund of taxes assessed on storage batteries manufactured and sold for motive power for electrically-propelled automobile trucks.
The question involved is whether or not storage batteries manufactured and designed to meet, and meeting, the exact specifications required for use in furnishing motive power for electrically-propelled automobile trucks, advertised for this purpose, and sold for this specific use, are subject to excise sales tax as “ parts ” of automobile trucks under section 600 [1] of the revenue act of 1924, 43 Stat. 322. We hold that they are liable.
*551 There have been a number of cases similar to the instant cases decided by this court and apparently there will be others of a similar kind; that is to say, cases involving a tax on the manufacture of batteries of different kinds, which to a greater or lesser degree and in one form or another, with and without attachments and with and without changes, are used on automobiles and automobile trucks. In each case there is an attempt by a construction of the statute and by proof of slight differences in the facts, the use, the method of attachment, something necessary to be done to attach the battery to the frame, to show that the plaintiff in interest was not subject to taxation. These efforts to show exemption from taxation, for that is what they amount to, grow out of refinements and strained constructions of the act of Congress.
Section 900[2] of the revenue acts of 1918 and 1921, 42 Stat. 291, after providing for a sales tax on automobiles, automobile trucks, motor cycles, etc., provides (3) for a sales tax where tires, inner tubes, parts or accessories for any of the articles enumerated in subdivision (1) or (2) are sold to any person other than the manufacturer or producer of any of the articles enumerated in subdivision *552 (1) or (2), section 600 of the revenue act of 1924. The litigation grows out of construction put upon “parts and accessories.” The statutes were passed by Congress for the purpose of raising revenue for the conduct of the Government. They were necessary acts of sovereignty, and these and all taxing statutes must be construed, as far as possible, to effectuate that purpose. While it is true that if there is a doubt as to the taxpayer’s liability it should be resolved in his favor, it is also true that in considering the conditions out of which this doubt grows the purpose of the statutes must be given full consideration.
Furthermore it is to be assumed that Congress, if it intended to give an exemption, would have so stated, or have limited the language of the statutes so as to afford clearly an exemption, and therefore, when it uses the generic word “ parts,” which must be taken in its broadest signification to effectuate the purpose of the statutes, it intended it to be used in its widest and general sense and not in a technical or limited sense.
Congress did not intend that the application of the acts should be based upon such a labyrinth and tangle of distinctions in its application.
In Worth Brothers Co. v. Lederer, 251 U. S. 507-510, the court in discussing the meaning of the words “ any part ” in the munitions tax act (sec. 301, c. 463, 39 Stat. 781), which provides “ that every person manufacturing ” certain articles and “ shells ” “ or any part of the articles mentioned * * * shall pay” an excise tax, etc., said:
“ Is not every element (we use the word for want of a better) in the aggregation or composition or amalgamation (whichever it is), of a shell, a part of it? If not, what is it? And what is the test to distinguish a part from not a part? ”
And further, speaking of the contention that forgings were not a part of a shell, the court said:
“ Congress did not intend to subject its legislation to such artificialities and make it dependent upon distinctions so refined as to make a part of a shell not the taxable 'part' of the law.”
*553 See also the case of Forged Steel Wheel Co. v. Lewellyn, 251 U. S. 511, affirming the Worth case, and construing the same statute.
As was said by the court in Carbon Steel Co. v. Lewellyn, 251 U. S. 501, 505, in construing the same statute as that involved in the Worth case, the rule of construction “ can not be carried to reduce the statute to empty declarations.” The rule of construction will not be pressed so far as to reduce a taxing statute to a practical nullity by permitting easy evasion.
It is fair to assume that if Congress had intended in the use of the word “ parts ” to exempt the seller where the thing sold was used in connection with the operation of an automobile, automobile truck, or motor cycle, because of the fact that the article sold could be used for other purposes, or that only a small portion of the production of the seller was used in connection with automobiles, or automobile trucks, or because the article sold could be used for other purposes, or because it had been sold and used for other purposes before the passage of the act, or because it required something to be done by the purchaser to attach it to the automobile, or because, when shipped, all the parts that constituted the article sold' were not put together or were shipped in different packages and required something to be done by the purchaser in order to apply them, it would have stated as much in the act. Having failed to do this, it is fair to assume that it did not intend that a limited meaning should be given to the word “ parts.” See United States v. Rindskopf, 105 U. S. 418; United States v. Anderson, 269 U. S. 422, 443; Metcalf & Eddy v. Mitchell, 269 U. S. 514, 520; United States v. Mitchell, 271 U. S. 9, 12; and Wickwire, etc., v. Reinecke, 275 U. S. 101.
Further, the acts authorized the Commissioner of Internal Eevenue to make rules and regulations for carrying them into effect. It is recognized that Congress in enacting such statutes could not go into all the details of administrative application and definition, and therefore intrusted this to the Commissioner of Internal Eevenue. It is to be assumed *554 that the commissioner in making the regulations[3] exercised the care and fairness and the knowledge of the subject required for preparing the regulation. And so the courts have held that if the regulation is reasonable and does not violate the spirit and purpose of the act involved, it should be upheld, and also that where the regulation applies, where the taxpayer seeking relief comes within the language of the regulation, the burden is upon him to show clearly and satisfactorily that the regulation is unreasonable and violates the spirit and purpose of the act — another way of saying that where a taxpayer claims that he has been illegally assessed and taxed the burden upon him is to establish the illegality.
The Commissioner of Internal Revenue has undertaken to define “ parts and accessories.” In the rapid changes that are being made in the construction of automobiles, automobile trucks, etc., and the parts and accessories used in the operation of them, by inventions, improved construction, and the application to them of articles used for other purposes with or without slight changes, or which had previ *555 ously been used for other purposes, it is readily appreciated that the regulations nnd definitions must, as far as possible, have a general application and could not possibly be so expressed as to cover all possible exigencies and every diversity of circumstances; and, therefore, in the interest of securing to the Government the income which the taxing acts were designed to provide, cases such as this must be approached in the light of what has been stated.
It is also clear that no general rule can be laid down in cases like the instant one, and that each of these cases involving different articles must rest upon its own facts and the fair and reasonable application to it of the statute and the regulations.
This court has decided several cases involving parts and accessories, commencing with the Atwater Kent case, 62 C. Cls. 419, which held that timers and coils were not to be classified as parts of automobiles simply because they might be used on automobiles, in the absence of proof that at the time when sold it was intended that the articles should be used on automobiles, and where also there had been no setting aside or allocation by advertising or otherwise of timers or coils for automobile use. It will be seen that that case stood upon its facts and must be left there. It was intended to establish no binding rule, and in so far as it may be construed to be in conflict with the views herein stated, it is hereby modified.
In the prior case of Martin Rocking Fifth Wheel Co. v. United States, 60 C. Cls. 466, there was involved a semitrailer whose body overlaps the frame of the drawing vehicle. It was a separate article, not used in connection with the operation of the automobile, etc., but attached to it and moved by it, and contributed nothing to the operation of an automobile or its use, and was not a part of its structure when in operation.
The next case, the National Rubber Filler Co. v. United States, 63 C. Cls. 337, concerned-a substance used to fill up the inside of worn-out tubes, and was nothing more than the application externally of a substance to prolong the life of a tube, as the repainting of a car prolongs the life of the body. *556 It was not an integral part of the machine, nor was it a part of its original construction. It might be that to-morrow this material would be utilized by some invented process to make complete tires to be used as such in the operation of an automobile. It unquestionably would then become a part. This illustrates the shifting sands upon which the construction of the statute rests. Each of these cases, it also appears, rested on its own facts.
The last case decided by this court was Cole Storage Battery Co. v. United States, 65 C. Cls. 164, in which on October 29, 1928, a writ of certiorari was denied by the Supreme Court. In that case it was held that a storage battery especially adapted and so designed and advertised as to meet the essential requirements of motive power is a part or accessory of an automobile, and this was held to be true of the battery in that case. It was further held that where the device or battery is necessary to the accomplishment of the functioning in a certain way of the combination of various elements and parts of the machine, it is a part or accessory of the machine, and 'that where the manufacturer who seeks the custom of the automobile trade advertises the special qualities of his product and claims its advantageous use as a part of an automobile or automobile truck, the battery comes within the statute and regulation of the commissioner.
The decision in that case is controlling in this. While the Edison battery might not perform exactly the same function as the Cole battery, it possesses all the characteristics necessary for a battery, in that in the automobile industry it is utilized for furnishing motive power for automobile trucks. The particular class of batteries taxed here was extensively advertised for this use by the plaintiffs and when sold these batteries were shipped direct to the consumers of batteries for the operation and propulsion of electric street trucks. The facts establish that several classes of automobile trucks used storage batteries for motive power, and that they would serve no useful purpose without the battery. The plaintiffs’ batteries, which were taxed, could be and were applied to these uses. It also appeared that some of the trucks when sold were equipped with Edison *557 batteries. The fact that these batteries in voltage requirements are used for other purposes does not affect the issue. Nor is the matter of the assemblage of batteries in standard trays relevant. The facts clearly show that the Edison battery possesses all the necessary characteristics of a battery for furnishing, and does furnish, motive power to automobile trucks. The fact that these batteries can be used for other purposes is not important. There are many parts of an automobile that can be and are used for other purposes. The form of battery taxed here was clearly specially adapted and designed and advertised to meet the requirements of motive power on automobile trucks. The plaintiffs were only taxed for batteries sold in connection with the operation of automobile trucks. The cases relied upon in plaintiffs’ brief-deal with the tax classification of an entire product and the incidental use independent of the principal use. Had the Commissioner of Internal Bevenue taxed the plaintiffs on all their storage batteries, irrespective of their adaptable use, it would have presented a different case. But this was not done in these cases. The batteries taxed were the batteries admittedly sold for use in the operation of automobile trucks, advertised for that use, and when sold shipped direct to the consumers for that use.
It follows that the plaintiffs can not recover. But, further, the plaintiffs have clearly failed to establish any right to exemption or to show to the satisfaction of the court that the commissioner’s regulation under which this tax was assessed and collected was unreasonable, much less in violation of the spirit and purpose of the act. We think it was altogether reasonable and in full accord with the spirit and purpose of the act.
The petition in each of the said six cases submitted, viz, Nos. F-359 and H-322, F-358 and H-324, and F-403 and H-323, should be dismissed and it is so ordered.
SiNNOtt, Judge; GreeN, Judge; Moss, Judge; and Booth, Chief Justice, concur.

 On and after the expiration of thirty days after the enactment of this act there shall be levied, assessed, collected, and paid upon the following articles sold or leased by the manufacturer, producer, or importer a tax equivalent to the following percentage of the price for which so sold or leased:
(1) Automobile truck chassis and automobile wagon chassis sold or leased for an amount in excess of $1,000, and automobile truck bodies and automobile wagon bodies sold or leased for an amount in excess of $200 (including in both cases tires, inner tubes, parts, and accessories therefor sold on or in connection therewith or with the sale thereof), 3 per centum. A sale or lease of an automobile truck or of an automobile wagon shall, for the purpose of this subdivision, be considered to be a sale of the chassis and of the body;
*551 (2) .Other automobile chassis and bodies and motor cycles (including tires, inner tubes, parts, and accessories therefor sold on or in connection therewith or with the sale thereof), except tractors, 5 per centum. A sale or lease of an automobile shall, for the purpose pf this subdivision, be considered to be a sale of the .chassis and of the body;
(3) Tires, inner tubes, parts, or accessories for any of the articles enumerated in subdivision (1) or (2), sold to any person other than a manufacturer or producer of any of the articles enumerated in subdivision (1) or (2), 2% per centum. T&is subdivision shall not apply to chassis or bodies for automobile trucks, automobile wagons, or other automobiles.

 That [“from and after January 1, 1922,” under 1921 act] there shall be levied, assessed, collected, and paid upon the following articles sold or leased by the manufacturer, producer, or importer a tax equivalent to the following percentages of the price for which so sold or leased:
(1) Automobile trucks and automobile wagons (including tires, inner tubes, parts, and accessories therefor, sold on or in connection therewith or with the sale thereof), 3 per centum.
(2) Other automobiles and motor cycles (including tires, inner tubes, parts, and accessories therefor, sold on or in connection therewith or with the sale thereof), except tractors, 5 per centum.
(3) Tires, inner tubes, parts, or accessories for any of the articles enumerated in subdivision (1) or (2), sold to any person other than a manufacturer or producer of any of the articles enumerated in subdivision (1) or (2), 5 per centum.

 Treasury Department Regulations 47 are in part as follows:
Art. 14. * * *. Any article which has reached a state of manufacture wherein it is in itself a component part or accessory, and is of such a nature that it may be used or attached by an ordinary repair man or individual user as distinguished from a manufacturer or producer, is subject to tax as a “ part ” or “ accessory.”
* * * * * * *
Art. 15. * * * any article designed or manufactured for the special purpose of being used as or to replace a component part of any such vehicle and which by reason of some peculiar characteristic is not such a commercial commodity as would ordinarily be sold for general use and which is primarily adapted only for use as component part of such vehicle.
* * * * * * *
Articles, however, which ordinarily would be classed as commercial commodities, become parts when, because of their design or construction, they are primarily adapted for use as component parts of such vehicles.
Component parts of articles taxable under this definition are taxable when sold separately, if they have reached such stage of manufacture that they are primarily adapted for use as such a component part.
* * * * * * *
Art. 16. * * * any article designed to be attached to or used in connection with such vehicle to add to its utility or ornamentation and which is primarily adapted for use in connection with such vehicle, whether or not essential to its operation.
* * * * * * *
Articles which have a general commercial use and which are not especially designed and peculiarly adapted for use in connection with automobile trucks, automobile wagons, other automobiles, or motor cycles are not subject to tax as “ parts ” or “ accessories.” * * *