HALTON TRACTOR COMPANY, Inc.,
a corporation, Plaintiff,

v.

UNITED STATES of America,
Defendant.

WES DURSTON, Inc., Plaintiff,

v.

UNITED STATES of America,
Defendant.

Nos. 32133, 32134.

United States District Court
N. D. California, S. D.

June 5, 1956.

Lloyd H. Burke, U. S. Atty., by George A. Blackstone, Asst. U. S. Atty., of San Francisco, Cal., for defendant.

Henry M. Jonas and Roy A. Sharff, San Francisco, Cal., for plaintiff.

OLIVER J. CARTER, District Judge.

The basic issue in these consolidated cases is whether the plaintiffs were coerced into paying to the Government taxes owed by a third party. Acting on behalf of the Halton Tractor Company and Wes Durston, Inc., Edward H. Halton paid social security and withholding taxes that were owed to the Federal Government by Lloyd Watson; the defendant claims that Halton was a volunteer.

Lloyd Watson used certain tractors and equipment in the operation of his contracting business. During 1947 Watson encountered financial difficulties, and on September 16, 1947, the Government filed a lien against Watson's property for unpaid taxes. Watson's tractors and equipment were either encumbered by a chattel mortgage, or sold to him under a conditional sales contract, which were in existence prior to the government lien. After the lien was filed Halton paid off a mortgage secured by some of Watson's equipment, and Durston bought a conditional sale contract covering some more of Watson's equipment, thereby acquiring the security position of Watson's mortgagee and conditional vendor. Watson agreed that Halton should repair and resell the equipment covered by the mortgage and conditional sale contract, and that Watson's equity would be applied to the purchase of new equipment. In January of 1948, before the equipment was repaired and resold, Halton had some conversations with Francis J. Reilly, an agent of the Internal Revenue Service.

Reilly told Halton about the Government lien on Watson's equipment, saying that it was superior to any interest that Halton or Durston had in that equipment; he also told Halton that the Government could seize the equipment and sell it at a forced sale. The proceeds of a forced sale would have been much less than the amount eventually realized when Halton did repair the equipment and sold it over a period of a year. Reilly believed that the Government could require the proceeds of any sale to be applied first to Watson's tax liability, and he convinced Halton of this proposition. The actual legal effect of a rather complex series of security transactions which led up to the acquisition by Halton and Durston of their interests in Watson's equipment, was that Halton and Durston succeeded to the rights of their predecessors, and therefore the Government lien was inferior to plaintiffs' interests; but it was reasonable for Halton to believe otherwise, because of the complexity of the preceding transactions and because Reilly, the agent of the Government, emphatically told him that the Government lien had priority. Furthermore Reilly taped labels on the equipment which bore the words "Property of the United States Government."

■ Acting under his belief that the Government could force a sale of Watson's equipment in its unrepaired condition, and could insist that proceeds of a sale be applied first to Watson's tax liability, Halton paid the taxes in question, acting on behalf of both plaintiffs. Plaintiffs contend here that they paid Watson's taxes under duress of goods; that is, that they paid the taxes because they believed it was the only way they could have saved their interest in the equipment from seizure and sale by the Government. A good definition of duress is referred to in Weir v. McGrath, D.C. S.D.Ohio, 52 F.2d 201, 202–203:

> "In the case of Radich v. Hutchins, 95 U.S. 210, 213, 24 L.Ed. 409, the court says: 'To constitute the coercion or duress which will be regarded as sufficient to make a payment involuntary, * * * there must be some actual or threatened exercise of power possessed, or believed to be possessed, by the party exacting or receiving the payment over the person or property of another, from which the latter has no other means of immediate relief than by making the payment.' "

This doctrine is particularly applicable to the facts of the case at bar: here the plaintiffs reasonably believed that the Government possessed a power over their property from which they had no means of immediate relief other than by making the payment demanded by the Government's agent. It is a conclusion of this Court that the Government lien was actually inferior to plaintiffs' interests in Watson's equipment, and that the Government could only have sold Watson's equity in the equipment. Therefore the seizure and sale

threatened by the Government's agent constituted a threat of unlawful Government action. In Robertson v. Frank Brothers Company, 132 U.S. 17, 23, 10 S.Ct. 5, 6, 33 L.Ed. 236, a case in which an importer paid an unlawfully assessed duty in order to avoid a heavy penalty and to get immediate possession of his perishable goods, the Court made the following instructive comments on the nature of duress:

> "The ultimate fact * * * was the moral duress not justified by law. When such duress is exerted under circumstances sufficient to influence the apprehensions and conduct of a prudent business man, payment of money wrongfully induced thereby ought not to be regarded as voluntary. * * * When the duress has been exerted by one clothed with official authority, or exercising a public employment, less evidence of compulsion or pressure is required * * *."

See also Stahmann v. Vidal, 305 U.S. 61, 66, 59 S.Ct. 41, 83 L.Ed. 41, and Atchison, T. & S. F. Ry. Co. v. O'Connor, 223 U.S. 280, 32 S.Ct. 216, 56 L.Ed. 436.

In the case at bar the Government's agent put labels on the equipment indicating that they were the property of the United States. He also insisted to Halton that Halton would have to pay Watson's taxes before Halton would be permitted to repair and resell the equipment. Halton had paid $25,930 for his interest in Watson's equipment and Durston had paid $30,100 for his interest. Watson's tax liability was in the amount of $7,777.97. If the equipment had been sold all at once at a forced sale in its unrepaired condition, and if the Government could have insisted that the proceeds of such a sale be applied first to the discharge of the tax liability, Halton and Durston would have suffered very heavy losses. In view of these facts it is the opinion and conclusion of this Court that plaintiffs paid Watson's taxes under duress, since they acted under an immediate and urgent necessity to prevent a seizure of their property. These facts indicate that plaintiffs had no donative intent when they paid Watson's taxes. Our Court of Appeals said in Parsons v. Anglim, 9 Cir., 143 F.2d 534, 537, 154 A.L.R. 153:

> "* * * it is obvious that it is the *volition of intent to donate* which is determinative, not the absence of coercion in the mere act of handling the moneys to the Collector along with the protest that he does not owe it." (Emphasis by the Court of Appeals.)

Defendant raises a procedural point. Defendant contends that this Court cannot consider the Government lien inferior to Halton's interest in the equipment because in order to prove the priority of his interest, Halton must rely upon a document (a chattel mortgage formerly held by the Morris Plan) that was not brought to the attention of the Commissioner in connection with the administrative claim for refund of the taxes in question. But the letter in which the Commissioner informed Halton that his claim for refund was disallowed, recognizes that Halton (as the Halton Tractor Company) had title to some of the equipment; that Watson had only an equity in that equipment; and that the Government's lien could apply only to Watson's equity in the equipment. Therefore there is nothing to the contention that the Commissioner was deprived of the opportunity to consider the claim for refund from the standpoint of Halton's interest being superior or prior to that of the Government.

Defendant also contends that when Halton repaired and resold Watson's equipment, the net proceeds from selling the equipment were greater than the amounts owed by Watson on the equipment, and that therefore Watson did have an equity which was subject to the Government lien. Watson owed Durston (Wes Durston, Inc.) $30,100 and Durston realized $30,500 on the resale of the equipment in which he had an interest; but Durston paid out over $1,000 for

## 414

parts and repairs before selling that equipment. Thus Watson would not have been entitled to any payment whatever from the proceeds of the sale and there was nothing to which the Government lien could apply. Watson owed Halton $44,596.10 including interest and taxes paid by Halton on Watson's account; Halton spent $6,517.37 for repairing the equipment he sold. The total of these two figures is $51,113.47. Halton received $57,807.97 as the proceeds of selling the equipment. When the amount owed to Halton and the amount Halton spent in repairs are deducted from the proceeds of the sale, that leaves $6,694.50, which might be referred to as the gross profit from the sale of the equipment. The several documents which evidence Halton's security interest in the equipment in question all provide that Halton is entitled to be reimbursed for the expenses involved in the repossession and resale of the equipment. Halton has claimed various items of expense, some of which are challenged by the defendant as unjustified. It is not necessary for this Court to pass upon the validity of all of the items claimed because at least one of them is justifiable, and it amounts to $7,931.25, which is sufficient in itself to wipe out any profit from the resale of the equipment. This item is termed "sales department operating expenses," and was arrived at by allocating to the sale of Watson's equipment a portion of the annual cost of running Halton's used equipment sales department, according to the ratio which the proceeds of the sale of Watson's equipment bore to the total used equipment sales for that year. Therefore this Court finds as a matter of fact that Watson was not entitled to have any of the proceeds of the resale of the equipment paid to him, and that neither plaintiff received anything of Watson's that the Government could reach.

Judgment is awarded to plaintiffs as prayed for. Counsel for plaintiffs shall prepare and present findings of fact, conclusions of law and a judgment in accordance herewith.