## CLIFT & GOODRICH, Inc., v. UNITED STATES.

### No. 275.

Circuit Court of Appeals, Second Circuit.
March 14, 1932.

White & Case, of New York City (Arnold J. Brock, of New York City, of counsel), for appellant.

George Z. Medalie, U. S. Atty., of New York City (Leon E. Spencer, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The petitioner was a corporation, the successor to a firm of the same name; it was organized on April 1, 1919, and took over the firm property on May twenty-fourth of that year in exchange for preferred stock issued to the partners. These had already on January eighth filed individual income tax returns for their shares in the firm income for the year 1918, and a firm return for excess profits tax, and they paid the amounts returned on January twenty-second. On Au-

752

gust fifteenth, the petitioner filed an excess profit and income tax return of the firm income for the year 1918, which was calculated as though it had been a corporation, as partners were allowed to do under section 330 of the Revenue Act of 1918 (40 Stat. 1094). The amount so shown the petitioner paid in three installments during 1919, after unsuccessful efforts to secure a set-off of the sums paid by the partners in January. On January 2, 1920, the Commissioner assessed against the petitioner the sum returned and paid, and later a deficiency which he afterwards abated on the ground that only the firm, and not the corporation, could be taxed. The sums paid by the partners were later refunded, but the petitioner's application for refund was refused, and this suit followed. All that is alleged regarding the relations between the petitioner and the partners as to the payment is as follows: "Each of said payments" (the three installments) "was charged on the books of the corporation to the tax account of the corporation, and not at that time, nor at any other time, charged either against the partnership or the individual members thereof." The return of August 15, 1919, was made in the name of "Clift & Goodrich, (Partnership)"; two of the schedules carried the same caption; the others, the name "Clift & Goodrich," not "Clift & Goodrich, Inc.," the corporation's title. The verification was by the president and treasurer of the corporation, who were two of the partners.

Section 330 of the Revenue Act of 1918 (40 Stat. 1094) allowed partners, whose business had been taken over by a corporation organized before July 1, 1919, in circumstances here existing, to file their return for 1918 as though they were a corporation, treating distribution made during the year as dividends, and not subjecting undistributed profits to surtaxes. This made a difference of some $37,000, by which the partners have profited, even assuming that they bore the same proportion of the tax here in question as shareholders that they would have borne as partners. The suit is based upon the theory that, as the Treasury officials treated the tax as that of the corporation without warrant of law, they have collected money which was really not due, since the partners should have paid it under a return made in accordance with section 330. If successful, the result will be that the partners will pay no taxes whatever for the year 1918. The judge dismissed the petition as demurrable and the petitioner appealed.

■ Any recovery must rest upon quasi contract, an implied promise to repay, raised ex æquo et bono because it was unconscionable for the respondent to keep the money. Cary v. Curtis, 3 How. 236, 11 L. Ed. 576; New York Life Ins. Co. v. Anderson, 263 F. 527 (C. C. A. 2). Had the petition alleged that the petitioner paid the tax under the mistaken belief that it was liable, the suit might perhaps succeed (Mayer v. Mayor, etc., of New York, 63 N. Y. 455; Betz v. City of New York, 119 App. Div. 91, 103 N. Y. S. 886, affirmed 193 N. Y. 625, 86 N. E. 1122), though even then there would be obstacles, for the old notion that a mistake of law will not serve in such a situation still prolongs its discreditable life; and it is moreover at least open to doubt whether there would not be a defence, if when the petition was filed, the period had already expired within which the partners could be assessed. But with these questions we need not concern ourselves, because the petition does not even intimate that the petitioner paid the tax under a mistaken belief that it was liable as a taxpayer. Indeed, it was not in existence during 1918, and it is entirely clear from the return itself that it was acting for the partners. The payment was no more therefore than a gratuitous discharge of the obligor's duty, and on what theory it can be recovered if that duty existed, we cannot conceive. The tax was certainly due from the partners and the Treasury had the right to keep the money, unless it was inequitable to do so because it came from the corporation. An obligee is surely not bound in good conscience to repay such collections.

■ Besides, it sufficiently appears that the corporation had recourse over against the partners. Two of them made the return as officers of the petitioner; they at least were liable. As to the rest they procured refunds of what they had paid on January 22, 1919, because of the payment here in question, and that established an implied promise to reimburse the corporation, which they had no right to exploit. This is not affected by the allegation that they had never been charged with the tax on the corporate books. The right existed, and might well have been released by common consent, if the partners were the only shareholders. What they would receive as former partners would come out of their dividends as shareholders. Moreover, the whole issue is in any case irrelevant, for it was not material to the Treasury's right to retain the payment that the petitioner should have indemnity.

■ The officials apparently supposed for a season that the corporation owed the tax, though they later receded from that position. No estoppel arises from this; it does not impugn the right of the Treasury to retain the money that its officers misconceived its basis, or their own powers. Had they coerced the payment, more might have been said, but all the instalments were paid before assessment. Nor does it make a difference that they were not made until the Treasury had refused to accept the partners' payments of January in substitution for that due under the return. The petitioner was still not obliged to pay the tax; when it did so, it was either a mere interloper, or acting for the partners.

■ We do not forget that under section 156 of title 26, U. S. Code (26 USCA § 156), taxes may be recovered though not paid under duress. The section does not mean to enlarge the Treasury's liability when the payment is not only voluntary, but made with full knowledge of the facts. It leaves open for determination whether under principles applicable in general to such suits, there is any basis for the recovery; and since it would be wholly unwarranted to rescind such a transaction merely because one party pays another's tax actually due, with full knowledge of what he is doing, the section is pro tanto irrelevant.

Judgment affirmed.