## OHIO LOCOMOTIVE CRANE CO. v. DENMAN.

## SAME v. UNITED STATES.

Nos. 6420–6423.

Circuit Court of Appeals, Sixth Circuit.

Nov. 16, 1934.

E. J. Brunenkant, of Cleveland, Ohio, for Ohio Locomotive Crane Co.

Morton K. Rothschild, of Washington, D. C. (Emerich B. Freed, of Cleveland, Ohio, Lee N. Murlin and Herman A. Krueger, both of Toledo, Ohio, and E. Barrett Prettyman

and Henry L. Young, both of Washington, D. C., on the brief), for Denman and United States.

Before HICKS and SIMONS, Circuit Judges, and RAYMOND, District Judge.

HICKS, Circuit Judge.

On February 12, 1930, appellant, the Ohio Locomotive Crane Company, herein called Corporation No. 2, brought suit against Nauts, Collector of Internal Revenue, to recover the sum of $124,714.27 and $22,270.85, with interest, which sums it alleged had been wrongfully exacted from it as income and profits taxes for the year 1918, and for the period from January 1 to September 30, 1919, respectively. Nauts died and the pending suit was revived against Denman, the administrator of his estate.

On August 6, 1930, appellant brought suit directly against the United States upon similar causes of action and for similar amounts. For the purposes of the trial, the causes were consolidated and tried by the court without a jury. The court dismissed the suits as to the larger amount, but rendered a joint judgment against the two defendants for the smaller. Hence the appeals by Corporation No. 2, and cross-appeals by the Administrator and the United States.

Corporation No. 2 and cross-appellants each requested special findings of fact and conclusions of law. In response, the court found that Corporation No. 2 was organized in 1916 under the name "The Ohio Crane Company"; that in 1923 it changed its name to "The Ohio Locomotive Crane Company"; that all its tax liabilities for 1918 and 1919 based upon its returns under the name, "The Ohio Crane Company," were completely settled in 1923 and that no further controversy thereover has arisen; that in 1909 another corporation had been organized under the laws of Ohio, having the identical name, "The Ohio Locomotive Crane Company," herein called Corporation No. 1; that it engaged in business until October 1, 1919, when it transferred its assets to a newly organized partnership styled "Ohio Locomotive Crane Company" and that thereafter, though it owned no property and transacted no business, it existed as a corporation until February 15, 1927, when its charter was canceled for failure to pay its state corporation franchise taxes; that about December 30, 1922, Corporation No. 2 purchased from the partnership, "Ohio Locomotive Crane Company," assets valued at $263,161.50 for which it paid $451.-

50 in cash and 1,390 shares of its common stock valued at $189 per share; that included in the purchase were assets of the value of $4,502.25, originally owned by Corporation No. 1, and acquired by the partnership on September 30, 1919; that the remaining assets sold by the partnership were created as a result of the partnership operations during the period from September 30, 1919, to December 1, 1922; that the members of the partnership were stockholders in both corporations; that during 1923 the partnership and both corporations occupied a single office in Bucyrus, Ohio, with a single office force; that from September 15, 1923, until February 15, 1927, the corporations coexisted with identical names and addresses and substantially identical officers, though but one was active.

The court further found that on June 14, 1919, at which time C. F. Michael was its president, Corporation No. 1 filed its income tax return for 1918 as a personal service corporation reporting no tax liability, and on March 19, 1920, it made a similar return for 1919; that on December 9, 1920, a revenue agent, after an examination of these returns, reported that personal service classification should be denied and that the taxes of Corporation No. 1 for 1918 and 1919 should be $172,126.07 and $20,622.78, respectively; that from that date until the beginning of the year 1926, Corporation No. 1 continuously contested this determination before the Commissioner, with the result that on April 10, 1926, an assessment was made in the sum of $124,712.27 for taxes for the year 1918, and on March 6, 1926, an assessment was made in the sum of $22,270.85 for that portion of the year 1919 above indicated.

These assessments were against "Ohio Locomotive Crane Company." As between the Commissioner and Corporation No. 2, the question is, whether these assessments, actually made in the name of the partnership, constituted an assessment against Corporation No. 1. Corporation No. 2 requested the court to find that they were against the partnership as a matter of law. We think this request was properly denied. These assessments were obviously intended to be against Corporation No. 1. The argument to the contrary is based on the omission of the word "The" at the beginning of the corporate name of No. 1.

This is a highly technical objection. We have been cited to no authority requiring that in an assessment the name of the taxpayer must be letter perfect. The symbols appear-

ing upon the assessment list for each year indicate that the assessment was against the corporation rather than the partnership.

From the findings of fact supported by the evidence, it is clear that appellant knew that the Commissioner was proceeding against Corporation No. 1 only, because (1) the tax of that corporation was the only tax in controversy; (2) Michael, as president of Corporation No. 1, who was also president of Corporation No. 2, not only executed a series of waivers extending the time for the assessment of the tax until November 7, 1926, but on May 22, 1925, signed the petition of that corporation for an appeal to the Board of Tax Appeals from the Commissioner's determination of the deficiency in its taxes for 1918; and (3) Michael had himself executed a power of attorney to one George A. Smith to represent Corporation No. 1 before the Bureau. Moreover, it is apparent that there was no intention to assess the partnership. The statute (section 218(a), Revenue Acts 1918, 1921, 40 Stat. 1070, 42 Stat. 245; Revenue Acts 1924, 1926, § 218 (a), 26 USCA § 959 and note) requiring that an assessment against a partnership should be made against the members thereof in their individual names was not followed.

The above-mentioned appeal of Corporation No. 1 to the Board of Tax Appeals was made from the ruling in the Commissioner's deficiency letter which carried the same mistake in name as the assessments. It is manifest that Corporation No. 2 assumed that the assessments were against Corporation No. 1 and ignored the error until the refund claims were filed on July 13, 1929, at which time the statute of limitations precluded the making of corrected assessments. Corporation No. 2 was not misled, and, so far as it is concerned, the assessments must be regarded as against Corporation No. 1.

On April 7 and May 7, 1926, respectively, notice and demand in the usual form for the payment of the taxes for the year and portion of year involved were mailed. In each instance the name of the taxpayer was given as "Ohio Locomotive Crane Company" and not "The Ohio Locomotive Crane Company." The court found that these notices and demands were received by Corporation No. 2 in the consolidated offices of appellant and Corporation No. 1 at Bucyrus and that Corporation No. 2 voluntarily paid the taxes.

Whether the payments were voluntary is the second question. There is ample evidence to support the finding that they were. Mr. Michael, president of Corporation No. 2, testified that when the notices and demands were received he went to Toledo, saw the Collector and protested their payment, but his protest did not go beyond a statement to the Collector, "that it would work a hardship upon us if we had to pay them at that time." To whom he referred by the pronoun "us" is doubtful, but he made no claim that the taxes were either illegally assessed or erroneously demanded. No warrant of distraint was ever issued against Corporation No. 2 and it paid the taxes for 1919 on April 15, 1926, and for 1918 in four installments between May 15 and June 1, 1926. The payments were made by checks and in the accompanying letters the following expressions are found:

"We would like to arrange to send you our check for $34,714.27 by Monday of next week. * * *"

"We also take pleasure in mailing to you herewith our additional check for $30,000.00. * * *" "and take pleasure in mailing to you herewith our check for $50,000.00. * * *"

"Enclosed please find Bucyrus City Bank check for $10,000.00. * * *" And, "We take pleasure in enclosing our check No. 4689 in the amount of $142.96 covering accrued interest."

It is true that Mr. Michael testified that at the time he issued the checks he thought he was paying the tax liability of Corporation No. 2, but his testimony is not convincing. Its uncertain nature is illustrated by the following excerpts therefrom:

"Q. Then at the time you issued those checks, whose tax liability did you think you were paying? A. The Ohio Crane Company.

"Q. Ohio Crane Company? A. Ohio Locomotive Crane Company.

"Q. Corporation No. 1 or Corporation No. 2? A. Well, Corporation No. 2.

"Q. You knew as a matter of fact that Corporation No. 1, bearing the same name, The Ohio Locomotive Crane Company, tax liability was under dispute from the year 1920 up to 1926, did you not? A. It was under dispute.

"Q. Yes. A. Yes, sir.

"Q. In the Treasury Department. You went to Washington? A. Yes, sir.

"Q. And conferred relative to the tax liability of Corporation No. 1, bearing the name The Ohio Locomotive Crane Company, did you not? A. Yes, sir. I didn't go to Washington; Mr. Stoltz went. * * *

"Q. Now, Mr. Michael, I again hand you this notice and demand for the year 1918, in the amount of $123,790.08. Now, in view of that petition, and in view of the notice and demand, when you paid that tax, you knew you were paying the taxes for Corporation No. 1, did you not? A. No, I can't say that I did.

"Q. You can't say that you did,—in view of the fact that less than a year previous you filed a petition with the Board of Tax Appeals in which that very amount was in dispute? A. The amounts are alike, but I don't —I can't say definitely as to that."

But, regardless of the weight to be given to Mr. Michael's testimony, there is substantial evidence, as indicated above, to sustain the findings of the court to the contrary.

■ Corporation No. 2 urges upon us the case of Moore Ice Cream Co. v. Rose, Collector, 289 U. S. 373, 53 S. Ct. 620, 77 L. Ed. 1265. Nothing in that case benefits it. It construes certain provisions of section 1014 of the Revenue Act of 1924, c. 234 (43 Stat. 253, 343), 26 USCA § 156 and note, amending Revised Statutes, § 3226. The amendment permits the recovery of taxes illegally assessed or collected regardless of whether the payment was voluntary or otherwise, but it gives no aid to one who "pays another's tax actually due, with full knowledge of what he is doing. * * *" See Clift & Goodrich, Inc., v. United States, 56 F.(2d) 751, 753 (C. C. A. 2). There is little room for doubt that Corporation No. 2 willingly made the payments upon the belief that it was itself liable therefor as a transferee; or that several of its largest stockholders, being the original transferees from Corporation No. 1, would be liable therefor as individuals. See Phillips v. Commissioner, 283 U. S. 589, 51 S. Ct. 608, 75 L. Ed. 1289. It was not seriously contended that Corporation No. 1 did not owe the tax for 1918. That question was foreclosed when its appeal to the Board of Tax Appeals was dismissed and we find nothing unconscionable, under the circumstances, for the government to retain the tax. Lewis v. Reynolds, 284 U. S. 281, 283, 52 S. Ct. 145, 76 L. Ed. 293; Cary v. Curtis, 3 How. 236, 246, 11 L. Ed. 576; American Security & Trust Co. v. Tait, 5 F. Supp. 337, 344 (D. C.).

■ As to the taxes for the year 1919, the court held that they were not assessed within the time permitted by law, that the amount thereof was not therefore collectible from anybody, and that appellant was entitled to recover therefor. We think the holding should be sustained in view of our conclusion that the assessment was really against Corporation No. 1. That corporation had by waivers extended the time for assessment to March 1, 1926, only, and the assessment was not made until March 6, 1926. Cross-appellant claims that the period for assessment was extended for one year from March 1, 1926, because Corporation No. 1 had dispossessed itself of its assets by a sale to the partnership and that the period for assessment did not therefore expire until March 1, 1927.

Cross-appellants misconstrue the effect of section 280 (b) (1) of the Revenue Act of 1926, 26 USCA § 1069 (b) (1). The extension of one year therein permitted applies not to the transferor but to the transferee (here the partnership). See City National Bank v. Commissioner, 55 F.(2d) 1073 (C. C. A. 5).

■ Cross-appellant United States makes the point that the joint judgment for $22,270.85 with interest was invalid; that the suit should have been dismissed against it for lack of jurisdiction; that the District Court in virtue of USC tit. 28, § 41 (20), 28 USCA § 41 (20), had only concurrent jurisdiction with the Court of Claims; that if the suit against the United States had been brought in the Court of Claims, it would have had no jurisdiction because the suit against the Collector was then pending in the District Court. See U. S. C. tit. 28, § 260 (28 USCA § 260). The point is well made, but a direct dismissal against the United States is not required. Corporation No. 2 is entitled to its judgment for the amount exacted from it for the year 1919, which it may have against one or the other of appellees or cross-appellants at its election. Matson Navigation Co. v. U. S., 284 U. S. 352, 356, 52 S. Ct. 162, 76 L. Ed. 336; Stark v. U. S., 14 F.(2d) 616, 618 (D. C.).

The result is that the judgment of the District Court denying a recovery in the sum of $124,714.27, the taxes in dispute for the year 1918, is affirmed, but the judgment against cross-appellants, Denman, Administrator, and the United States of America, for $22,270.85 with interest, is reversed and the case is remanded to the District Court for further proceedings consistent with this opinion.