STAHMANN ET AL., DOING BUSINESS AS STAHMANN FARMS CO., *v.* VIDAL, COLLECTOR OF INTERNAL REVENUE.

No. 12. Argued October 12, 13, 1938.—Decided November 7, 1938.

62

*Mr. Thornton Hardie* for petitioners.

*Assistant Solicitor General Bell,* with whom *Solicitor General Jackson, Assistant Attorney General Morris,* and *Messrs. Sewall Key, F. E. Youngman,* and *Warner W. Gardner* were on the brief, for respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

We are to decide whether the petitioners may maintain an action to recover from a collector of internal revenue sums paid by them as taxes assessed under the Bankhead Cotton Act.[1]

During the crop year 1934-1935 the petitioners were engaged in growing cotton and produced a quantity in excess of the allotment for which, under the terms of the Act, they were entitled to obtain tax exemption certificates. Petitioners delivered the excess cotton to Santo Tomas Gin Company, which ginned it and filed returns with the respondent, as collector, showing a tax of some $13,000 due on the ginning. The respondent, as directed by the Act, assessed the tax against the gin company. The latter refused to deliver the cotton to the petitioners until

---

[1] Act of April 21, 1934, c. 157, 48 Stat. 598.

the tax was paid, and to obtain their cotton the petitioners, in November 1934 and January 1935, paid the tax to the respondent. March 6, 1935 they presented a claim for refund, which was rejected by the Commissioner of Internal Revenue August 22, 1935. Suit was brought against the respondent May 5, 1936, to recover the amount paid with interest, the petitioners alleging that the Bankhead Act was unconstitutional. This the answer denied, and set up the further defense that, under the Act, the petitioners were not liable for the tax, any payment they had made was in discharge of a liability imposed by the Act on the gin company, and, consequently, they were not entitled to maintain the action.

The District Court, a jury having been waived, held that the Act was unconstitutional, that the petitioners could maintain the action, and gave judgment for them. The Circuit Court of Appeals refused to pass upon the constitutional question, as it was of opinion that the trial court erred in sustaining the petitioners' standing, and reversed the judgment.[2] On account of the importance of the case we granted certiorari, limited, however, to the question whether the petitioners were the proper parties to maintain the action.

Section 20 (b) of the Bankhead Act [3] stated the conditions upon which a proceeding might be maintained for the recovery of any sum alleged to have been erroneously or illegally assessed or collected under its terms. The Act was repealed February 10, 1936,[4] prior to the institution of the instant action. The petitioners were therefore remitted for recovery of the sum demanded to R. S. 3226, as amended by the Act of June 6, 1932, § 1103.[5] As thereby required, they timely filed a claim for refund,

---

[2] 93 F. 2d 902.
[3] 48 Stat. 606.
[4] 49 Stat. 1106.
[5] 47 Stat. 169, 286; U. S. C. Tit. 26, §§ 1672–1673.

which was denied, and timely brought their action. Under this section it is unnecessary to plead or prove that the tax was paid under protest or its collection was accomplished by duress.

The sole question for decision is whether the petitioners voluntarily paid someone's else tax. If they did they may not maintain the action.[6]

The respondent insists that, by the terms of the Act, the tax is imposed upon the ginner and not upon the producer. The petitioners, on the other hand, point to the provisions of the Act which make the levy of the tax dependent upon the vote of cotton producers and not upon any act of the ginners; which base exemptions from the tax upon the time, manner, and character of production and not upon the time, manner, or character of ginning; which grant exemptions to producers, not to ginners; which condition exemptions upon the producers meeting certain conditions and limitations; and which fix quotas for exemptions to producers. They say Congress never intended the ginner should bear the tax, since the Act provides that he is to be reimbursed up to twenty-five cents per bale for additional expense incurred by him in connection with the administration of the Act. They assert that the respondent's contention that the tax is upon the ginning of the cotton is negatived by the fact that it is not assessed upon all cotton ginned regardless of the amount produced by the owner of the particular farm, and that it amounts per bale to approximately five times the amount of the customary charge for ginning. They call especial attention to those sections of the Act which impose a lien for the tax upon the

[6] Compare *Wourdack* v. *Becker*, 55 F. 2d 840; *Clift & Goodrich* v. *United States*, 56 F. 2d 751; *Ohio Locomotive Crane Co.* v. *Denman*, 73 F. 2d 408; *Central Aguirre Sugar Co.* v. *United States*, 2 F. Supp. 538; *Combined Industries, Inc.* v. *United States*, 15 F. Supp. 349.

cotton if it is removed from the gin, forbid transportation of the cotton,—the producers' property,—beyond the county where produced, except for storage, and prohibit opening of the bale or sale of the cotton until the tax shall have been paid. They say it is obvious the statute made the ginner a convenient collecting agent to enforce payment of the tax and that the purpose was to force the farmer to pay by prohibiting his use of his excess cotton unless and until he paid; and the latter is, therefore, entitled to maintain an action for the refund of the tax if it was illegally collected.

We hold that the petitioners are entitled to maintain the action. The purpose of the Bankhead Act was to restrict the production of cotton and, to that end, to levy a heavy tax in respect of that produced in excess of the farmer's quota. The tax bore no relation to the ginning of cotton. On the contrary, it was intended to fall, and the Act attempted to make it fall, upon the producers. The assessment of the tax against the ginner was intended to immobilize the cotton in his possession until the producer should liquidate the tax. This is evident from the provisions which impose a lien upon the cotton for the amount of the tax upon removal of it from the gin without payment of the tax, and, while permitting it to be stored by the producer, forbid the opening of a bale or the sale of it until the tax liability shall have been discharged. Plainly the purpose was that if the ginner should release the cotton to the producer while the tax remained unpaid the lien upon it would insure payment by the producer.

The scheme of the Act sets the case apart from any to which our attention has been called arising under other taxing acts. The collector was part of the machinery for compelling the farmer to pay the tax, for immobilizing the cotton and making it unusable until the assess-

ment he had made against the ginner was satisfied by payment of the tax. Whether or not the tax was imposed upon the petitioners, they are, according to accepted principles, entitled to recover unless they were volunteers, which they plainly were not because they paid the tax under duress of goods.

The judgment is reversed and the cause remanded for further proceedings in conformity with this opinion.

*Reversed.*

MR. JUSTICE REED took no part in the consideration or decision of this case.