**PARSONS v. ANGLIM, Collector of Internal Revenue.**

**No. 10401.**

Circuit Court of Appeals, Ninth Circuit.

June 21, 1944.

WILBUR, Circuit Judge, dissenting.

Louis S. Beedy, Marie M. Nelson, and Thomas, Beedy & Paramore, all of San Francisco, Cal., for appellant.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Helen R. Carloss, Edward First, and Valentine Brookes, Sp. Assts. to Atty. Gen., and Frank J. Hennessy, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before WILBUR, DENMAN, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a decision of the district court denying a refund to appellant of $8,093.82, income taxes admittedly due from her deceased husband for the tax years 1918, 1919, 1920, 1926 and 1927. The facts are not disputed.

Appellant had tendered to the Collector of Internal Revenue checks for amounts due for the respective years, with a protest setting forth the facts of her acquisition of her husband's property as a joint tenant with right of survivorship, and the cases supporting her contention that she was not legally obligated to pay his tax as a

transferee of her husband's property. At the same time she filed claims for refunds. The Collector accepted the tendered checks and the Commissioner refused the refunds. He disagreed with her contention, holding that appellant was liable as a transferee of all the husband's property by a transfer to her in joint tenancy, with right of survivorship, made after the husband's tax liability had arisen.

Appellant sued the Collector under the provisions of 26 U.S.C.A. Int.Rev. Code, § 3772(a) (1), (b) which authorizes the recovery of "any sum * * * in any manner wrongfully collected" "whether or not such * * * sum has been paid under protest or duress." That a person situated as appellant may be a taxpayer has been established, United States v. Updike, 281 U.S. 489, 50 S.Ct. 367, 74 L.Ed. 984; Karno-Smith Co. v. Maloney, 3 Cir., 112 F.2d 690; White v. Hopkins, 5 Cir., 51 F.2d 1595, and it would follow that she is entitled to all the remedial provisions within the taxing statutes.

On the trial the Collector abandoned the position of the Commissioner and admitted that appellant was not liable as transferee. We are thus compelled to assume in her favor that there can be no question of tax evasion or of fraud in her acquisition of the joint tenancy nor in the insolvency of the husband when he made the transfer, though later, when he died, he left no estate. The trial proceeded below on the Collector's contention that appellant paid the tax voluntarily for her husband. The district court found that the payment had been made with her protest, but nevertheless held

"(1) That the plaintiff was not a transferee within the meaning of Section 311 of the Revenue Act of 1928, [26 U.S.C.A. Int.Rev.Acts, page 434], or other similar statute.

"(2) That the plaintiff paid the taxes referred to voluntarily, and without demand, threat or coercion.

"(3) That the plaintiff is not entitled to recover her voluntary payment of taxes actually due to the United States and paid to the defendant."

On the trial it was agreed that the husband had not returned to the Commissioner his income for the years in question because he was then residing in and acquiring the income in the Philippine Islands and believed his only income tax obliga-

tion was to that government. Appellant testified that she came to California in 1930 and sometime thereafter heard that the federal tax agents were examining the books of residents of the Philippines for their income tax liability to the United States. Appellant said she did nothing about the taxes until 1938, when a business adviser pressed upon her the activities of the revenue agents in the Islands and "that sooner or later it would be demanded that I pay the taxes, [her husband's] and if I paid them before a certain date, which has been mentioned—I don't remember now—I would save considerable."

Appellant further testified to the acquisition of the joint tenancy in her husband's property and of the absence of any assets in his estate to meet his tax liability. Her realistic prescience that the Commissioner would treat her as a transferee who owned the tax, is shown by her testimony that "Well, I thought that I would eventually have to pay it, and the sooner I did it the better; that is the way I have always felt, if there is anything I have to do I like to get it over with."

Although not entitled by the taxing law to make a return for her deceased husband, appellant prepared forms of returns correctly showing his tax for each of the years in question. It was with these documents that she filed her affidavit of protest of nonliability, tendered her checks and filed her claims for refund.

■ Although appellant had rightly based her payment on the theory that the Commissioner would disagree with her protest and claim the tax as due from her as transferee, and although the Commissioner denied her the refunds on the ground that she was liable as such transferee, the Collector claims that because appellant was not acting under the duress of a demand on her by the Commissioner she must be deemed to have paid the tax as a volunteer gift on behalf of her deceased husband. To us it is inconceivable that one intending a donation would have acted as has the appellant in this case.

The legal effect of this decision is that a person who reasonably anticipates that the Commissioner will wrongfully demand a tax from him as a transferee, must wait until the Commissioner makes his demand, during which time interest and, quite likely, penalties will accrue in the government's favor if the Collector's contention be the law. The Commissioner might wait for twenty years, yet any attempt to stop interest and penalties by payment and claim for refund is futile. And this for the absurd reason that if the contention of no liability accompanying the tender is valid, it conclusively shows that the claimant knew she owed no tax and hence must be making a volunteer donation of someone's else tax.

In this case, if appellant's statement of the law in her protest was wrong and she was liable for her husband's tax, she could have the benefit of § 813 of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Acts, page 1154, eliminating all interest and penalties accruing prior to June 30, 1939, only by a payment before that date. On the Collector's theory that any payment of the tax of another without the Commissioner's demand cannot be recovered, the taxpayer here is between the devil and the deep blue sea. If she pays the tax, she loses the amount though she does not owe it. If she waits for a demand until after June 30, 1939, she will have to pay over 100 per cent in interest before she can even raise the question of her liability. Such a contention is entirely inconsistent with the provisions of § 3772, supra, that suits for wrongfully collected taxes "may be maintained" without the "duress" of a demand by the Commissioner.

■ We believe the Collector "wrongfully collected" the taxes as that term is used in 26 U.S.C.A. Int.Rev.Code, § 3772 (a) (1), (b), when he accepted appellant's tendered checks with knowledge of the fact that she did not owe the taxes. The protest that she did not owe them in the communication making the tender of the checks and claims for refund if the checks were accepted, refute the contention that she was volunteering a donation of her husband's taxes to the government. The case is one "where the transferee voluntarily pays the tax and is thereafter denied administrative relief," stated in Phillips v. Commissioner, 283 U.S. 589, 598, 51 S.Ct. 608, 612, 75 L.Ed. 1289. Cf. Karno-Smith Co. v. Maloney, supra.

Appellee cites several cases[1] in which

---

[1] Keith v. Woodworth, 6 Cir., 115 F. 2d 897; Ohio Locomotive Crane Co. v. Denman, 6 Cir., 73 F.2d 408; Clift & Goodrich v. United States, 2 Cir., 56 F. 2d 751; Wourdack v. Becher, 8 Cir., 55 F.2d 840.

the words "volunteer" and "voluntarily paid" are used with reference to payments of taxes due from others than the payor, which are held to be donations by the latter for the benefit of the former. In none of these cases does it affirmatively appear, as here, that the payor did not intend to make a donation.

One may of his own volition perform the act of paying another's tax under protest that he does not owe it, but stating that he does so because he believes the Commissioner will demand it from him. Here, in a sense, the moneys are "voluntarily paid" to the Collector, but it cannot be said that they are paid as a donation for the benefit of the original tax debtor. If the word "volunteer" in tax parlance has become a word of art meaning one who cannot recover moneys paid as a donation to discharge another's tax, it is obvious that it is the *volition of intent to donate* which is determinative, not the absence of coercion in the mere act of handing the moneys to the Collector along with the protest that he does not owe it.

The appellant should have recovered her refund. The judgment is reversed.

Reversed.

WILBUR, Circuit Judge (dissenting).

I dissent. The appellant paid a just tax due and owing from her deceased husband, Gay W. Parsons, to the Government of the United States. She intended to do exactly what she did do. The majority conclude that if she did not intend to make a gift to the Government she can recover this tax so paid. I know of no decision supporting such doctrine; none is cited by the parties nor by the majority in their opinion. The motive which activates a person who pays another's tax is entirely immaterial unless the person acts under duress.[1] The appellant, by her protest, made clear the reason why she paid the tax of her husband. The husband had died without any property except that which he held in joint tenancy with his wife. His death deprived his estate of the means of paying the tax because that means had vested in the appellant. She paid the tax because she feared she would be held liable for it as a transferee and that the liability would be doubled because of the delay in payment. This was not duress.

---

[1] Stahmann v. Vidal, 305 U.S. 61, 64, on page 64, 59 S.Ct. 41, on page 42, 83 L.Ed. 41, and cases cited in note 6.