## PACIFIC AMERICAN FISHERIES, Inc. v. MULLANEY.

### No. 6621–A.

District Court, Alaska
First Division, Juneau.
Nov. 10, 1952.

H. L. Faulkner, (of Faulkner, Banfield & Boochever), Juneau, Alaska, for plaintiff.

J. Gerald Williams, Atty. Gen., John H. Dimond, Asst. Atty. Gen., for defendant.

FOLTA, District Judge.

In Mullaney v. Anderson, 342 U.S. 415, 72 S.Ct. 428, Chap. 66, S.L.A.1949, imposing a license tax of $50 on non-resident fishermen as against $5 on resident fishermen, was held unconstitutional as to the excess of $45. By this action the plaintiff seeks a refund of $30,105 in license fees paid by it for the years 1949, 1950 and 1951 for and on behalf of the non-resident fishermen employed by it as well as those from whom it merely bought fish.

The first complaint in this action was held insufficient, Pacific American Fisheries, Inc., v. Mullaney, D.C., 105 F.Supp. 907, but the plaintiff was allowed to amend its complaint to allege that the assessment of the tax was wrongful and that payment thereof was made under protest and duress —the essentials of a claim for refund under the common law. The amended complaint alleges the payment by plaintiff of $20,610 from its own funds pursuant to a provision of its contract with the fishermen requiring it to pay the license taxes, and $9,495 from funds derived by way of deductions from the earnings of the fishermen and the wages of other employees who are included within the statutory definition of "fisherman"; that the tax was wrongfully assessed and that the payments referred to were made under protest and duress.

The plaintiff operates canneries in various sections of the Territory and is compelled to import the bulk of its employees each season from the states because local fishermen are not available in sufficient numbers. For the mutual convenience of the Territory and the salmon packers, including the plaintiff, it has been their practice to remit by their own checks the license tax fees due from its fishermen.

The act became effective March 21, 1949. So far as pertinent to this controversy, it provides that:

"It shall be unlawful for any person, association or corporation, or for the agent of any person, or for the officer or agent of any association or corporation, to have in his, their or its employ any fisherman who is not duly licensed under this Act or to purchase fish from any fisherman who is not so licensed.

* * *" Section 5.

"* * * Failure to procure or exhibit such license as indicated above or otherwise comply with this Act shall be a misdemeanor, and upon conviction thereof the offender shall be subject to a fine not exceeding $500.00 or imprisonment not to exceed six months, or to both such fine and imprisonment." Section 6.

The non-resident fishermen effectively shifted the burden of this tax to the plaintiff by means of the following provision in their employment contracts:

"Territorial fishing licenses, when required, shall be paid by the Company for men covered by this agreement who work exclusively for the Company."

This provision was in effect during the entire period of this controversy. Some of the contracts allowed the employer to deduct the license fees from the wages or earnings of the fishermen. Obviously, in these instances the plaintiff was a mere agent for the remission of the money, with no right to claim a refund.

Plaintiff argues, however, that it has an "understanding" or "agreement" with the fishermen to recover for them that part of the payments which it deducted

from their wages. This is wholly insufficient in the absence of an assignment. As to the payments made under the quoted provision, the plaintiff claims it is entitled to a refund in its own right.

Before the opening day of the fishing season in 1949 most of the fishermen employed under the contract had signed license applications and delivered them to the plaintiff in accordance with the practice referred to. Plaintiff, however, began operations without having paid the license fees. When the tax collector visited its Naknek plant on July 6, 1949, and requested payment, there was some reluctance or unwillingness to pay because the plaintiff and the fishermen were of the opinion that the tax was invalid. Thereupon the tax collector warned the plaintiff's officers and fishermen that they were subject to arrest and prosecution, the former for employing unlicensed fishermen and the latter for not paying the tax. But it should be pointed out in this connection that not only was the collector not empowered to make arrests but that no formal complaint was ever lodged with any magistrate charging the plaintiff or any of its officers with a violation of the act. On a subsequent call at the plant on July 16, the applications were turned over to him and thereafter the fees were paid by the plaintiff as stated. Protest was made at the time some of the payments were made, and some of the applications and licenses bear the notation that the fee was paid under protest. At that time the plaintiff was engaged in the prosecution of a suit to have the tax declared invalid, and points to this as further proof of protest.

The instant action is in the nature of a test case, with a relatively small amount of the total sum collected under the statute at stake. The defendant, conceding it has no right to retain the money, asserts that its only interest is to protect itself from future liability on the same claims.

In essence the plaintiff's claim rests on the fact that it actually delivered the monies to the Territory, and that by reason of the peculiar circumstances under which this industry operates, its labor relations, and the terms of the statute, it was forced to make the payment and bear the burden of the tax. It contends that the collector demanded that it pay the tax and that, therefore, it was compelled to pay to avoid the penalties of the act and the disruption of its business, and in support thereof argues that the provisions of the act are self-executing and that since the Act was declared unconstitutional, the assessment of the tax was invalid.

Defendant contends that the plaintiff is not the real party in interest, that the fishermen are indispensable parties, that the acts of the collector were not such as to support a finding of duress, and that the protest was insufficient. It is unnecessary to consider all of these contentions, in view of the conclusions reached.

The principal question is whether payment of the tax was made under duress, coercion and an invalid assessment. Correlative questions, important only if an affirmative answer is given to the foregoing question, are whether, as to the taxes paid pursuant to plaintiff's contract with the fishermen, the fishermen are indispensable parties; and whether, as to the taxes deducted from the pay and earnings of the fishermen, the plaintiff is the real party in interest.

So far as plaintiff's claim rests on its making the actual delivery of the monies there is no dispute. The established practice of paying the tax to the Territory had been adopted from considerations of mutual benefit and convenience, such as economy in collection and avoidance of interruptions with plaintiff's fishing and other operations. This procedure was followed here, although it was not required by statute.

Irrespective of this procedure and the practical assumption of the tax by the plaintiff under its labor contracts, the incidence of the tax remains on the fishermen. As between the plaintiff and its fishermen, the only effect of the contract provision is to augment their compensation. If compensation in this form fails because of the invalidity of the tax, it is the fishermen who are entitled to a refund. Economically, the diffusion theory of tax incidence makes plaintiff's claim of carrying

the burden of the tax rather dubious. New Consumers Bread Co. v. Commissioner, 3 Cir., 115 F.2d 162, 131 A.L.R. 1329. The real dispute arises over the reasons why plaintiff made the actual delivery. Plaintiff claims that because the statute made it unlawful to employ unlicensed fishermen, and because the fishermen refused to pay for the licenses themselves, it was forced to pay in order to protect its investment and continue its business. But the statute did not require the plaintiff to pay the tax. It is not directed in terms or in practical operation against employers. The tax collector was familiar with the provisions of the act and the practice referred to when he called at plaintiff's plant. It is abundantly clear that his request for payment was made pursuant to the established practice and not from any notions of liability of the plaintiff. Equally unavailing is the contention that the provisions of the act are self-executing. It may be that they are of such character in the sense that they require no complementary legislation to make them effectual or operative. But they are not self-executing as that term is used in the law of duress because the act is devoid of any provision authorizing summary seizure, distraint or forfeiture of property, franchise, the right to sue, or providing for the immediate accrual or acceleration of penalties or interest. Gaar, Scott & Co. v. Shannon, 223 U.S. 468, 471, 32 S.Ct. 236, 56 L.Ed. 510. The penalties of the statute may be invoked only upon the doing of affirmative acts and after according the one charged a reasonable opportunity to challenge its validity in the traditional fashion.

Thus it would appear that the statute alone did not compel plaintiff to make this payment; but it may well be that the sanctions of the statute, in conjunction with plaintiff's contractual obligation, left it no alternative, for it could not have compelled the fishermen to pay the tax without breaching its contracts and risking a labor dispute. It could not have discharged all of its unlicensed employees because they were irreplaceable, at least during the season of 1949. It could not have continued in its employment, or bought fish from, unlicensed fishermen without risking prosecution. Ceasing operations would have resulted in the loss of its investment. Under these circumstances, plaintiff asserts that to characterize the payment as "voluntary" is not realistic. It would, therefore, appear that the plaintiff's contention that payment was made under duress is reducible to the proposition that irrespective of the absence of at least some of the elements of duress, the situation which confronted it in July 1949, was so fraught with risk of pecuniary loss that the request of the collector was itself sufficient to transform the situation into one of duress. In answering this contention, it may not be amiss to make some observation on the nature of duress as that term is used in tax law.

It has been pointed out that tax refunds are a matter of governmental grace, New Consumers Bread Co. v. Commissioner, supra. Nevertheless where the payment is made involuntarily, it may be recovered. In recent decisions, the courts have been more indulgent toward the degree and type of compulsion required to render a payment involuntary, Parsons v. Anglim, 9 Cir., 143 F.2d 534, 154 A.L.R. 153. Here it appears that if any improper influence was exerted upon the plaintiff, it is traceable to the bargaining power of the fishermen rather than to the statute or the request of the collector. Extensive research has not revealed any decision allowing recovery where the force, duress, or coercion was not the product of governmental action, but rather the result of the actions of independent parties, Brumagim v. Tillinghast, 18 Cal. 265, 79 Am.Dec. 176; Annotation 64 A.L.R. 51. The usual definitions of compulsion, resulting from demand and seizure or threatened seizure of the taxpayer's person or property, are not apposite because here the tax was not placed by statute upon the plaintiff. It should be pointed out here that "demand" in tax law is a term of art. In the legal sense a demand may be made only upon the one who by express provisions of the statute is made liable for the tax. The

request of the tax collector, therefore, did not constitute a demand and hence there could have been no seizure of plaintiff's officers or its property for nonpayment of the tax imposed on its fishermen, from which it follows that an essential element of duress, that of demand, is entirely lacking. Nor was any threat of seizure made. Atchison, T. & S. F. Ry. Co. v. O'Connor, 223 U.S. 280, 32 S.Ct. 216, 56 L.Ed. 436; Gaar, Scott & Co. v. Shannon, supra, and the annotations at 64 A.L.R. 9, 84 A.L.R. 294, 48 A.L.R. 1381, 74 A.L.R. 1301. Enforcement of the penalties for hiring unlicensed fishermen could not effect the collection of the tax from plaintiff. While the tax was on the fishermen employed by plaintiff, the individual fishermen cannot be considered "property" of the plaintiff so that it could be said that payment was in effect made to protect plaintiff's interest in them, as is often the case where real property is concerned.

The authorities cited by plaintiff are inapposite because in each there was an actual or anticipated demand made by the government upon the person who paid the money, Parsons v. Anglim, supra; White v. Hopkins, 5 Cir., 51 F.2d 159; Ward v. Board of County Comm., 253 U.S. 17, 40 S.Ct. 419, 64 L.Ed. 751; Smart v. United States, D.C., 21 F.2d 188; and upon whom the statute placed the tax. Security Nat'l Bank v. Young, 8 Cir., 55 F.2d 616, 84 A.L.R. 100; Ratterman v. American Exp. Co., 49 Ohio St. 608, 32 N.E. 754; City of Franklin v. Coleman Bros., 1 Cir., 152 F.2d 527; Atchison, T. & S. F. Ry. Co. v. O'Connor, supra; Ward v. Board of County Comm., supra. These crucial elements are lacking here. Moreover, in the cases cited the payer delivered the money pursuant to actual or anticipated demand, under duress of the execution or threatened execution of the tax collection remedies and penalties designed to operate against the person or property of the payer. Not only was no demand made here, but there was no threat to invoke or pursue any remedy for the collection of the tax from the person or property of plaintiff. It would appear, therefore, that the plaintiff paid the tax of another without demand and without being compelled by law to do so.

Some of the cases cited by the plaintiff deal with situations where the tax was on property in which the payer had an interest, McFarland v. Cent. Nat'l Bank, 10 Cir., 26 F.2d 890; Smart v. United States, supra; City of Franklin v. Coleman Bros., supra; Pederson v. Stanley Co., 34 S.D. 560, 149 N.W. 422; Carpenter v. Shaw, 280 U.S. 363, 50 S.Ct. 121, 74 L.Ed. 478; or the refund was allowed under statutory provisions liberalizing recoveries, Parsons v. Anglim, supra, and hence are readily distinguishable from the instant case. Moreover, in none of the cases cited was the money delivered pursuant to a contract with the person who was supposed to pay the tax, as was done in the case at bar. Thus the decisions cited by the plaintiff offer neither precedent nor analogy for recovery here.

An additional ground for denying recovery is that the right to a refund belongs to the fishermen. The $50 license purchased for them by the company was additional compensation for their services, the essential nature of which was not affected by the circumstance that it was paid to the Territory in satisfaction of their tax liability. The fishermen are entitled to the benefit of their agreement whether it takes the form of a refund or a license; and since the contracts are negotiated before each fishing season, it would seem that payment of the $50 fee must have been within the contemplation of the parties irrespective of its validity.

For the reasons stated, I conclude that the payments were not made under duress imposed by the defendant and that the plaintiff is not the real party in interest. Accordingly, the plaintiff is not entitled to recover.