**Emmanuel B. DAVID, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. CV 80–4156–RMT(Kx).**

United States District Court, C.D. California.

Nov. 10, 1982.

Samuel W. Gordon, Hemar, Gordon & Rousso, Encino, Cal., for plaintiff.

Stephen S. Trott, U.S. Atty., Charles H. Magnuson, Asst. U.S. Atty., Chief, Tax Div., Arthur M. Greenwald, Asst. U.S. Atty., Los Angeles, Cal., for defendant.

## MEMORANDUM

TAKASUGI, District Judge.

This memorandum decision is filed pursuant to Rule 52(a), Federal Rules of Civil Procedure.

## FACTS

Plaintiff David initiated this action seeking a refund of employment taxes, penalties and interest assessed against Grand Care Inc. ("GCI"), a California corporation, excluding any sums representing withholding and Federal Insurance Contribution Act ("FICA") taxes deducted from the wages of GCI employees.

GCI is a corporation which commenced doing business in early 1972. It owned and operated Grand Care Convalescent Hospital in Anaheim, California and Burbank Palms Convalescent Hospital. Plaintiff was an employee and corporate officer in charge of operations and management, including the management and operation of the two convalescent hospitals. Plaintiff also owned a majority of the outstanding stock of GCI.

Grand Care Convalescent Hospital and Burbank Palms Convalescent Hospital ceased business on December 1, 1974 and February 18, 1975, respectively. GCI was not dissolved at that time but had only minimal assets to pay off its liabilities.

On or about May 5, 1975, plaintiff received a notice from the Internal Revenue Service ("IRS") indicating that $28,811.42 in federal employment taxes were due from GCI. On or about July 21, 1975, plaintiff received a further notice that an additional $8,532.38 in federal employment taxes were owed by GCI.

On May 15, 1975, plaintiff conferred with IRS agent Siems regarding the delinquent payroll taxes of GCI. Plaintiff informed the IRS that GCI did not have the assets to pay off the delinquent taxes. Plaintiff assumed that since he was an officer of the corporation he would be personally liable for the corporate tax liability. Plaintiff indicated a willingness to make some type of payment plan with the IRS to discharge the corporate tax liability.

On August 1, 1975, plaintiff paid by hand-delivery to the IRS two cashier's checks for $10,000 and $7,500. There was no reference as to what liability the checks were to apply, but plaintiff did state that the checks were plaintiff's personal money to "pay off my account with the IRS." Other than the instant tax dispute, plaintiff owed no federal taxes on August 1, 1975.

On November 3, 1977, the IRS received plaintiff's claim for refund of employment taxes, penalties and interest for $39,005.90. Plaintiff requested a refund of all monies which plaintiff personally paid excluding any sums that represented withholding and FICA taxes deducted from the wages of GCI employees.

Of the amount claimed by plaintiff, employment taxes of $38,872.83 had been previously assessed against GCI on the following dates:

Withholding & FICA Taxes, Penalties, and Interest:

| Date Assessed | Period | Amount | |
|---|---|---|---|
| Sept. 8, 1975 | 1st Q 1972 | $ 208.00 | |
| Sept. 8, 1975 | 2nd Q 1972 | 218.40 | |
| Sept. 8, 1975 | 3rd Q 1972 | 312.00 | |
| Feb. 18, 1974 | 3rd Q 1973 | 163.96 | |
| Aug. 18, 1975 | 3rd Q 1973 | 1.74 | |
| Feb. 17, 1975 | 2nd Q 1974 | 430.40 | |
| Sept. 1, 1975 | 2nd Q 1974 | 3.77 | |
| May 5, 1975 | 4th Q 1974 | 28,811.42 | |
| July 21, 1975 | 1st Q 1975 | 8,532.38 | $38,682.07 |

Federal Unemployment Tax (FUTA), Penalties and Interest:

| Date Assessed | Period | Amount | |
|---|---|---|---|
| April 21, 1975 | 1972 | $ 117.83 | |
| Aug. 18, 1975 | 1972 | 2.15 | |
| Aug. 4, 1975 | 1973 | 70.78 | 190.76 |
| | | TOTAL | $38,872.83 |

Of the employment taxes, penalties and interest assessed against GCI, the following amounts constituted withholding and FICA taxes deducted from the wages of GCI employees:

| Date Assessed | Period | Total Assessment | W/T and FICA Portion |
|---|---|---|---|
| May 5, 1975 | 4th Q 1974 | $28,811.42 | $19,402.21 |
| July 21, 1975 | 1st Q 1975 | 8,532.38 | 5,688.67 |
| | | TOTAL | $25,090.88 |

Subsequent to the filing of this refund suit, plaintiff has reduced his claim of $39,005.90 by at least $25,090.88, the latter consisting of employee withholding and FICA taxes. The parties have stipulated that plaintiff's claim is now $13,781.95 which represents the amounts assessed against GCI as an employer for FICA and Federal Unemployment Taxes plus penalties and interest.

## DISCUSSION

■ The court is initially required to resolve the issue of whether plaintiff has filed a timely claim for refund. 26 U.S.C. § 6511(a) provides:

Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the latter . . .

Plaintiff has met the three-year requirement of the statute. Plaintiff filed his claim for refund on November 3, 1977. The certificate of assessment and payments maintained by the IRS indicates that the return for the fourth quarter of 1974 was filed by plaintiff on January 31, 1975. The IRS records also reveal that the return for the first quarter of 1975 was filed by plaintiff on April 30, 1975. It was from these two returns that the IRS issued the tax liabilities of $28,811 and $8,532 against GCI. It was to this corporate tax liability that plaintiff made payments of $17,500 on August 1, 1975.

The next issue is whether plaintiff has standing to maintain the present refund suit. 28 U.S.C. § 1346(a)(1) provides:

The district court shall have original jurisdiction of: (1) Any civil action against the United States for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal revenue laws;

Defendant contends that this court lacks jurisdiction over this action because plaintiff does not have standing to sue under 28 U.S.C. § 1346(a)(1). Defendant insists that plaintiff does not come within the meaning of the word "taxpayer" since he did not pay the employment taxes claimed from personal funds, was not assessed these taxes nor was he personally liable for them.

There is some conflict among the authorities on the question of whether a refund suit can be filed by a person who pays a third party's taxes. Defendant relies on *Busse v. United States*, 542 F.2d 421 (7th Cir.1976); *Arndt v. United States*, 493 F.Supp. 552 (S.D.Texas 1980); and, *Hummel v. United States*, 494 F.Supp. 1003 (S.D. Iowa 1980) to support its position.

In *Busse*, plaintiff's husband secretly liquidated a corporation. They were subsequently divorced and plaintiff was awarded the family home by the court. Prior to the divorce, the IRS had assessed deficiencies of approximately $4,300 against the husband for unpaid taxes owed by the corporation. After the divorce decree, the IRS assessed a deficiency of $19,511 against plaintiff and her husband jointly for the tax on the income realized by the husband in liquidating the corporation. The IRS filed tax lien notices on the basis of these assessments. Plaintiff subsequently sold the family home in order to raise money. However, in order to remove the tax lien on the home and deliver clear title to the buyer, plaintiff paid the assessed taxes.

In a subsequent action for refund, the Seventh Circuit dealt with the issue of whether a person who is not liable for a tax but pays it in order to remove a lien against his/her property may sue for a refund. The court held that plaintiff did not have standing to bring the refund action since other remedies were available to contest a

tax lien including an action for injunctive relief to prevent a wrongful governmental levy under 26 U.S.C. § 7426. 542 F.2d at 425. The court also specifically stated that it did not need to decide the issue of whether potential personal liability is a sufficient qualification for taxpayer status or whether there must be an actual assessment against the plaintiff seeking a refund. *Id.*

In *Arndt, supra,* plaintiff sought to recover $42,000 in taxes which he had paid on behalf of a corporation to protect his economic interests. After the corporation became delinquent in paying its withholding and social security taxes, the IRS levied on certain properties (improvements which had been attached to real property) belonging to the plaintiff and the corporation. The IRS was in the process of selling these improvements in order to collect the taxes due from the corporation. Plaintiff paid the $42,000 in taxes in order to avoid losing his property by confiscation. The court held that since plaintiff was never assessed the tax and denied personal liability for the tax, he had no valid refund claim against the United States. 493 F.Supp. at 552. The court did indicate that plaintiff may have a cause of action against the corporation. *Id.* The court further held that a refund suit could not be brought by a person who pays a tax to eliminate the threat of his property being levied since plaintiff's remedy arose under 26 U.S.C. § 7426 for wrongful levy. *Id.*

In *Hummell, supra,* a former wife of a taxpayer paid her husband's withholding and FICA tax liability in order to remove a federal tax lien ,which had been issued against joint property owned by plaintiff and her ex-husband. Plaintiff was not herself subject to the tax liability. The court held that plaintiff lacked standing under 28 U.S.C. § 1346(a)(1) to bring this suit because plaintiff was not the person against whom the tax was assessed. 494 F.Supp. at 1005. The court indicated that she could have invoked 26 U.S.C. § 7426 to prevent the IRS from wrongfully levying upon her property in an attempt to collect another person's taxes. *Id.*

It appears the foregoing cases cited by defendant are inapplicable to this refund suit. These cases involved situations in which the plaintiff paid a third party's taxes in order to remove a federal tax lien which had been issued on plaintiff's property. In each of these cases, plaintiffs did not claim that they believed they were personally liable for the third party's taxes. Their position was that they paid a third party's taxes to release a tax lien on their property and therefore were entitled to commence a refund suit. The court in each of these cases denied plaintiff standing to bring the action primarily because 26 U.S.C. § 7426 provided plaintiffs an opportunity to seek injunctive relief to prevent the IRS from a wrongful levy on their property in order to satisfy tax obligations of other parties.

In the case at bar, plaintiff paid $17,500 to the IRS on August 1, 1975 on the assumption that he was personally liable for the corporate tax obligations. Plaintiff did not pay this amount in order to remove any kind of federal tax lien on his personal property.

In *Parsons v. Anglim,* 143 F.2d 534 (9th Cir.1944), plaintiff paid taxes owed by her husband when she learned the IRS was examining her deceased husband's financial books in order to determine a tax liability. Plaintiff had been informed that sooner or later she would have to pay her husband's taxes and that if she paid them before a certain date, she could save a considerable amount of money based upon penalties and interest. In that action, the Ninth Circuit held that since plaintiff did not owe the taxes and since they could not be collected from her or her property, the IRS in receiving her checks wrongfully collected the taxes. 143 F.2d at 536. The absence of coercion or duress on the part of the IRS or the fact that payment was made on plaintiff's own volition was immaterial so long as it could not be said that the payment was made as a donation for the benefit of the original tax debtor. *Id.* at 537.

■ In the instant case, when plaintiff paid the $17,500 on August 1, 1975 he was under the impression that he was personally

liable for the corporate tax liability. Prior to this payment, plaintiff met with IRS agent Siems regarding GCI's tax liability on May 15, 1975. At this time, Siems completed a form entitled "Report of Interview Held With Persons Relative to Recommendation of 100% Penalty Assessments." (See Exhibit 123). Plaintiff was later held personally liable for corporate taxes of GCI under 26 U.S.C. § 6672. Following the reasoning in *Parsons,* since plaintiff himself was not liable for the tax and since the tax could not be collected from his personal assets, the IRS in receiving the checks wrongfully collected the taxes. The testimony of the witnesses establishes that plaintiff was not making the payment of $17,500 as a donation to pay off the tax liability of GCI. Instead, he was making the payment on the assumption that he was discharging his personal liability to the IRS.

The Seventh Circuit in *Busse, supra,* specifically stated that they were not deciding the issue of whether potential personal liability is a sufficient qualification for taxpayer status. 542 F.2d at 425. However, it appears as if the Ninth Circuit in *Parsons, supra,* has held that a person who pays a tax of a third party on the assumption that he was personally liable on that tax does have standing to bring a refund action for wrongfully collected taxes. 143 F.2d at 536–537. None of the cases cited by defendant involved the issue of whether potential personal liability is sufficient to qualify for taxpayer status. Plaintiff has standing to pursue a refund action under 28 U.S.C. § 1346(a)(1). *See Parsons, supra; Adams v. United States,* 380 F.Supp. 1033 (D.Mont.1974); *cf. United States v. Halton Tractor Co.,* 258 F.2d 612 (9th Cir.1958).

Plaintiff's payments to the IRS of $17,500 came from plaintiff's personal funds. GCI had no assets at the time of the payment. Plaintiff testified that he had borrowed the monies from his sister and relatives in the Philippines. Plaintiff opened an account at a Security Pacific Bank in Anaheim, California with this sum in the name of GCI at the request of his accountant in order to prevent his creditors from attaching the account.

Plaintiff is entitled to the refund of $13,781.95. Only employers are required to pay the employer's contribution to FICA taxes. The deficiencies issued by the IRS were directed specifically to the tax liability of GCI and not to plaintiff. Plaintiff assumed that as an officer of GCI he was personally liable for the corporate tax liability. In plaintiff's dealings with the IRS in May of 1975, it does not appear that the IRS dispelled plaintiff's belief regarding his personal liability. In fact, it appears that IRS agent Siems recommended the 100% penalty assessment against plaintiff at the May 15, 1975 meeting. The testimony of plaintiff credibly establishes there was no indication on plaintiff's part that he was intending to pay off the tax liability of GCI. It would be an injustice to allow the IRS to retain the $13,781.95 when there was no legitimate tax obligation owed by plaintiff. Plaintiff is entitled to judgment in the sum of $13,781.95 plus interest.