## BAILEY v. UNITED STATES.
### No. 49735.

United States Court of Claims.
June 3, 1952.

Elton B. Taylor, Charlotte, N. C., for plaintiff.

J. W. Hussey, Washington, D. C., Ellis N. Slack, Acting Asst. Atty. Gen., Andrew D. Sharpe, Washington, D. C., on the brief, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

LITTLETON, Judge.

Plaintiff brings this action for the recovery of alleged overpayments of income tax of $5,459.04 upon the income derived from his restaurant business during the years 1942 and 1943.

From 1926 to 1943, inclusive, the plaintiff, Carroll Bailey, was the sole proprietor and operator of a restaurant business in Washington, D. C., known as the "Railway Lunch" or "Railway Restaurant." Licenses to operate the restaurant were obtained from the District of Columbia in plaintiff's own name through the year 1937. About 1938, however, plaintiff encountered difficulties with the District of Columbia authorities because of illegal "numbers activities" on the restaurant premises, and as a result was unable from 1938 through 1943 to obtain the necessary operating licenses for his restaurant in his own name. It became expedient, therefore, to represent to the licensing authorities during this period that the business was owned by plaintiff's brother, Ernest Bailey.

Ernest Bailey had been employed by the plaintiff as a counterman in the restaurant since 1926, receiving a weekly salary for his services. Despite the fact that during the years 1942 and 1943, he was represented as the owner of the business for the purpose of obtaining a license, Ernest Bailey had no financial interest in the business, had no part in its management, and received no share of the profits. Notwithstanding these facts plaintiff reported the income from the Railway Restaurant for 1942 and 1943 in the name of Ernest Bailey as he did not want the income from the restaurant to appear in his individual income tax returns, and thus acknowledge to the licensing authorities that he was the actual owner.

These returns were prepared under plaintiff's direction by individuals employed for that purpose, and were filed with the office of the Collector of Internal Revenue in Baltimore, Maryland. The return for 1942 stated that the name of the taxpayer was "Ernest Bailey, Railway Lunch," that the taxpayer's occupation was "Restaurant Owner," and that he was self-employed. Although he had no part in the preparation of the return, Ernest Bailey affixed his signature thereto at the request of plaintiff. This return, which was filed on March 15, 1943, reported a tax liability of $2,953.03. Plaintiff sent two checks signed by himself to the Collector in partial payment of this liability, one on March 15, 1943, in the amount of $738.25, and another on June 11, 1943, in the same amount, making a total of $1,476.50. These checks were credited by the Collector against the tax of Ernest Bailey.

Prior to the filing of a final income tax return for 1943 on March 15, 1944, plaintiff made two payments on the estimated tax liability of the Restaurant for 1943. These checks, one in the amount of $1,425.19 dated September 15, 1943, and the other in the amount of $1,425.18 dated November 30, 1943, were both drawn on funds of the plaintiff and, pursuant to a power of attorney given by plaintiff, were signed "Carroll

Bailey, H. P. Billings, Atty." In order to identify the payment as being for the account of Ernest Bailey's supposed tax liability, one of the checks contained the notation in the corner "Income and Victory Tax, Ernest Bailey." The final tax return for 1943, which was again prepared under plaintiff's direction, named as the taxpayer "Railway Restaurant." Although Ernest Bailey again had nothing to do with its preparation, the tax return bore the name of Ernest Bailey, which signature was placed thereon by plaintiff. The unpaid balance of tax reported therein, $1,132.17, was also paid from plaintiff's funds by a check signed "Carroll Bailey, H. P. Billings, Atty.," and also contained a notation in one corner, "Ernest Bailey," for the purpose of identifying the payment.

For these same taxable years, 1942 and 1943, plaintiff filed in his own name his individual income tax returns with the Collector's office in Baltimore, reporting therein his income from sources other than the Railway Restaurant. In his 1942 return plaintiff stated that his occupation was "Restaurant Owner," and reported a total tax of $85.33, which he duly paid. Plaintiff's return for 1943 showed an unpaid balance of tax of $1,861.53, which was also duly paid.

During these same years Ernest Bailey, who resided in Fairfax, Virginia, filed joint income tax returns with his wife in the Collector's office at Richmond, Virginia. Both returns reported taxable income derived from salary payments, both stated the taxpayer's occupation to be "Restaurant Work," and both named as the taxpayer's employer "Ernest Bailey."

Neither plaintiff nor Ernest Bailey ever notified the Bureau of Internal Revenue that the income of the Railway Restaurant belonged to plaintiff rather than to Ernest Bailey. However, in 1945 the Bureau of Internal Revenue made a field audit of plaintiff's returns for the years 1939 to 1943, inclusive. Included in this audit were not only the plaintiff's individual income tax returns, but also the separate returns filed to report the income of the Railway Restaurant. As a result of this audit, the

true facts became known and the Commissioner of Internal Revenue combined the total net income from the Railway Restaurant for 1942 and 1943, previously reported in the returns of "Ernest Bailey, Railway Restaurant," with plaintiff's income from other sources for these years. On the basis of this combined income the Commissioner determined that plaintiff owed deficiencies, fraud penalties of 50 percent, under the provisions of 26 U.S.C. § 293(b), and interest, in the total amount of $17,270.95 (finding 10). In making this determination the Commissioner treated the income of the Restaurant as income of the plaintiff not previously reported.

The Commissioner, in computing these deficiencies, gave plaintiff credit for the tax previously assessed and paid on the individual and business returns filed in his own name, but did not allow him credit for the taxes assessed and paid on the 1942 and 1943 returns of the Railway Restaurant in the amount of $1,476.50 for 1942, and $3,982.54 for 1943. On April 6, 1945, plaintiff executed a waiver of restrictions on the assessment and collection of these deficiencies, penalties, and interest, and at the same time asked an employee of the Bureau of Internal Revenue what was going to happen to the taxes paid for the Railway Restaurant for which he had not received credit. Plaintiff was informed that these taxes would be refunded to Ernest Bailey who could indorse the check over to plaintiff. Thereafter, by checks dated July 24, 1945, and August 16, 1945, plaintiff paid a total of $18,032.74 in settlement of these sums.

On March 15, 1946, plaintiff filed with the Collector in Baltimore claims for refund for the years 1942 and 1943 in the amounts of $1,476.50 and $3,982.54, respectively. These claims were not presented in the name of Ernest Bailey as suggested, but rather were in the name of plaintiff and were signed by him. These claims stated the following grounds for refund:

Claimant paid this tax, but it was assessed and paid under name of Ernest Bailey, c/o Railway Restaurant, Washington, D. C.

The income on which the above tax was paid was subsequently added to that of claimant and he paid the tax thereon.

This claim is to recover the double tax paid on this income.

Both claims for refund were disallowed by the Commissioner, with the result that neither plaintiff nor Ernest Bailey has ever received any credit for or refund of the $5,459.04 in taxes paid on the returns filed for the Railway Restaurant for the years 1942 and 1943.

It is plaintiff's contention that he can recover these overpayments of $5,459.04 in this action because (1) the tax was paid upon income derived from property owned by him, (2) the returns reporting this income were actually prepared at his direction, (3) the tax upon the income was actually paid in its entirety by him from his personal funds thus making him the taxpayer, and (4) he was recognized as the taxpayer by the Bureau of Internal Revenue in 1945 when, as a result of the field audit, they combined the Restaurant income with his personal income from other sources, determined that he had understated his income for 1942 and 1943, and assessed against and collected from him a 50 percent penalty. Plaintiff urges that if he is not recognized as the taxpayer the income from the Restaurant for the years in question will be subjected to double taxation.

Defendant argues that plaintiff is not the proper party to claim or recover the tax payment on the income of the Railway Restaurant because he is not the taxpayer named in the returns. The defendant insists that Ernest Bailey was the taxpayer who reported the Restaurant's income for 1942 and 1943, and was the person against whom original assessments were made and since the payments here in question were credited to the account of Ernest Bailey, he is the sole party directly concerned with the overpayments, and he alone may recover these sums. In this connection the Government also points to the fact that plaintiff was advised in the first instance to have Ernest Bailey file the claims for refund, although the officials then knew that plaintiff had paid the tax. Lastly, the Government argues that plaintiff comes into court with unclean hands as his predicament is largely attributable to his attempt to defraud the Government of income taxes properly due on his undisclosed business income, and that the court should therefore leave him in the position in which it finds him.

The contentions of the parties resolve themselves primarily into the question of who was or should be treated as the taxpayer under the circumstances of this case. We are of the opinion that all of the facts point to the conclusion that plaintiff, Carroll Bailey, was the actual taxpayer. In paying the taxes upon the income which plaintiff reported in his brother's name, plaintiff was actually paying the taxes upon his own income earned by property owned by him. He was not acting as a volunteer in making these payments, and is not barred from maintaining an action for their recovery on this ground. Stahmann v. Vidal, 305 U.S. 61, 59 S.Ct. 41, 83 L.Ed. 41. The evidence establishes that the returns were prepared at plaintiff's direction, a task normally performed by the taxpayer, and that he paid the taxes reported therein with his personal checks drawn upon his personal funds. These acts, when viewed in the light of the dictionary definition of a taxpayer, that is, "one who pays a tax," indicate that plaintiff was the taxpayer in the instant case. Cf. White v. Hopkins, 5 Cir., 51 F.2d 159. Also, it has been held that the taxpayer is the person whose income measures the tax and whose income is subjected thereto. Union Pacific Railroad Co. v. Bowers, D.C., 28 F.2d 370. Regardless of the fact that Ernest Bailey was originally reported as the taxpayer, plaintiff is clearly the person whose income was subjected to the tax paid.

Plaintiff also appears to fit the definition of a taxpayer contained in the Internal Revenue Code. Section 3797 of the Internal Revenue Code, 26 U.S.C. § 3797, entitled Definitions, provides in part as follows:

"(a) When used in this title, where not otherwise distinctly expressed or

manifestly incompatible with the intent thereof—* * *

"(14) *Taxpayer.* The term 'taxpayer' means any person subject to a tax imposed by this title."

In defining the taxpayer as the "person subject to a tax," we are of the opinion that this section has reference to the person *properly* subject to the tax, and plaintiff was that person under the facts and circumstances of this case. Consequently, defendant's argument that plaintiff was not the taxpayer and not the proper party to present the refund claim cannot be sustained.

More important than these considerations, however, is the fact that as a result of the field audit in 1945 the Commissioner of Internal Revenue recognized the income of the Railway Restaurant as being properly attributable to plaintiff, and determined that plaintiff had understated his income for 1942 and 1943. In reaching this conclusion the Government disregarded the form in which the Restaurant income had been reported and looked at the true substance of the events involved. Cf. Griffiths v. Helvering, Commissioner, 308 U.S. 355, 60 S.Ct. 277, 84 L.Ed. 319; Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916. Having thus determined that plaintiff was the person properly subject to the tax upon this income, the Government may not now, in fairness, say that plaintiff is the wrong person to seek a refund of the taxes previously paid by him upon the same income. The discovery of the fraud and the subsequent recognition of plaintiff as the taxpayer for the purpose of assessing the additional tax and penalty upon the income of the Restaurant, was also a recognition of plaintiff as the taxpayer entitled to seek a refund of the taxes previously paid upon the same income. The Government may not look to the substance of the transaction for purposes beneficial to its interest and disregard the substance for other purposes beneficial to plaintiff's interests.

■ Refund of the admitted excess collection should not be denied upon the Government's argument that plaintiff comes into this court seeking relief with unclean hands. It is true that plaintiff had a fraudulent purpose in reporting the income of the Railway Restaurant in the manner described above. However, following the discovery of the fraud, plaintiff paid a penalty of 50 percent of the additional tax determined. Hence, no reason exists for this court to impose the further penalty of double taxation to the extent of $5,459.04 upon him by refusing to recognize his right to claim a refund.

■ There remains to be considered defendant's argument that plaintiff's refund claims were not timely filed. Defendant urges that since plaintiff was not the taxpayer who filed the return, he was not entitled under the provisions of 26 U.S.C. § 322(b) (1), to three years "from the time the return was filed by the taxpayer" within which to file refund claims, but rather, as the person actually paying the tax, plaintiff was at the most entitled to two years from the date of payment of the tax within which to file his claims. All of the payments involved in this suit, except one, were made more than two years before plaintiff filed the refund claims on March 15, 1946. Section 322(b) (1) provides as follows:

"Unless a claim for credit or refund is filed by the taxpayer within three years from the time the return was filed by the taxpayer or within two years from the time the tax was paid, no credit or refund shall be allowed or made after the expiration of whichever of such periods expires the later. If no return is filed by the taxpayer, then no credit or refund shall be allowed or made after two years from the time the tax was paid, unless before the expiration of such period a claim therefor is filed by the taxpayer."

Inasmuch as we have concluded above that plaintiff actually filed the returns in question; that the income shown thereon was his income; that he was in fact the taxpayer, and that he was recognized as such by the Government; we believe that plaintiff must be afforded the benefits of the 3-year period following the filing of the

return within which to seek the refund. The claims, which were filed on March 15, 1946, were therefore timely filed for both the years 1942 and 1943.

Plaintiff is entitled to judgment against the United States in the sum of $5,459.04, with interest thereon as provided by law.

It is so ordered.

JONES, Chief Judge, and HOWELL, MADDEN and WHITAKER, Judges, concur.

MADDEN, Judge.